631 A.2d 1335

COMMONWEALTH of Pennsylvania, Appellant,

v.

Dwight JOHNSON, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 5, 1993.

Filed Sept. 30, 1993.

Joseph J. Mittleman, Asst. Dist. Atty., Media, for Com., appellant.

Dennis Woody, Media, for appellee.

Before CIRILLO, BECK and KELLY, JJ.

KELLY, Judge:

In this opinion we are called upon to determine whether a police officer's tactile impression of contraband during a valid *Terry* stop was sufficient to constitute probable cause to arrest. We hold that it was, and under the standard recently announced by the United States Supreme Court in *Minnesota v. Dickerson*, —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (No. 91–2019, slip opinion filed June 7, 1993), we reverse.

The facts and procedural history of this case may be summarized as follows. In order to execute a warrant for the arrest of Derrick Griffin, Chester Police officers awaited Griffin's arrival at a Howard Johnson's restaurant where, the police were informed, Griffin was scheduled to participate in a drug transaction. One police officer, who had known Griffin by sight, observed in an undercover capacity. Meanwhile, other officers conducted surveillance of the area, awaiting Griffin's arrival.

Griffin arrived, as a passenger in a car driven by Dwight Johnson, appellee, who backed his car into a spot in the parking lot. Appellee turned the lights off and remained in the car as Griffin exited and walked toward the Howard Johnson's entrance. Police officers apprehended Griffin and the undercover police officer to maintain that officer's undercover status. No controlled substances were found on Griffin's person. Observing appellee in the car, one of the officers, Officer Sendek, approached appellee, ordering him not to move. Officer Sendek then frisked appellee. Officer Sendek later explained:

Q. Conduct a pat down of him?

A. I crunched his clothes.

Q. Okay. What did you discover upon crunching his clothes as you say?

A. In—I did a squeeze of his entire body and then when I went into—in his crotch area, I—crotch area I could—I though I felt a controlled substance there.

Q. What makes you think that? What was it you felt in particular that led you to believe it was a controlled substance?

A. When I went under—in his testicle area, I felt something crunchy.

Q. So, you felt the area between his testicles and his anus then.

A. Yes, sir.

Q. And what was in that—what was the feel of that area? What did you—what did you note?

A. Well, as many crotches I felt, it was something that normally isn't there.

Q. All right. What was it? Was it—was there a substance there then?

A. I felt it was a controlled substance.

\* \* \* \* \* \*

THE COURT:

That was beautifully phrased.

\* \* \* \* \* \*

BY MR. LAURIE:

Q. But there was noticeably something that you know is not there ...

A. Not supposed to be there, yes.

Q. Physiologically, is that correct?

A. Yes.

Q. All right. And the substance that you're describing, can you tell us what it felt like? Was it a hard substance, soft? Did it have a consistency to it? What was it?

A. Something—something granular.

Q. All right. Have you felt such a substance prior to this occasion?

A. Quite a few occasions, yes, sir.

Q. Can you estimate how many times you—you've handled chunky, granular substances that turned out to the [sic] controlled substances?

A. I'd say at least 50 times, sir, in the past four years.

Q. And at that time—after feeling this substance, did you confront this to the Defendant Johnson? Say anything to him at that time?

A. I honestly don't remember what I said to him, sir.

Q. What did you do then?

A. I told Sgt. Butler, Wendell Butler, "I think he's got something in his crotch."

\* &ast; &ast; &ast; &ast; &ast;

Q. Okay. Have you conducted these types of pat down searches and I think you did crotch searches in the past?

A. Yes, we have, sir.

Q. Have you had occasion, on these—on these other searches to, in fact, touch—occasion to touch testicles in the process of conducting such a search?

A. I—I feel—I feel a lot of guys' crotches, yes.

Q. Okay. Did this feel like a testicle?

A. No. It didn't. No, no—the ...

Q. Very good.

A. The cocaine did not feel like anyone's testicle.

N.T. November 21, 1991 at 14-16; 18-19.

After feeling the crunchy, granular substance in appellee's crotch, Officer Sendek concluded that appellee possessed illegal narcotics. Appellee was then taken to the police station where he was asked to remove his clothing. The search at the police station revealed a package of cocaine in appellee's crotch.

Appellee was arrested and charged with possession and possession with intent to deliver a controlled substance. Appellee moved to suppress the cocaine found in his crotch. The Court of Common Pleas conducted a hearing and ordered the evidence suppressed. The Commonwealth timely appealed.[1]

1. We note that this appeal is properly before us, as the Commonwealth has certified in its Statement of Jurisdiction that the order in question will substantially handicap or terminate the prosecution in this matter. See Commonwealth v. Frankenfield, 410 Pa.Super. 377, 599 A.2d 1346

On appeal, the Commonwealth presents the following issues for our review:

WHETHER THE POLICE HAD PROBABLE CAUSE TO ARREST THE DEFENDANT WHERE, DURING A PAT–DOWN FRISK OF THE DEFENDANT, THE PO-LICE OFFICER FELT AN OBJECT WHICH HE KNEW COULD NOT BE PART OF THE DEFEN-DANT'S BODY AND WHICH THE OFFICER BE-LIEVED WAS COCAINE, THE OFFICER HAVING FELT SUCH AN OBJECT NUMEROUS TIMES BE-FORE?

Commonwealth's Brief at 4.

When reviewing the Commonwealth's appeal from an adverse decision of the suppression court, we must consider "only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. Smith*, 396 Pa.Super. 6, 8, 577 A.2d 1387, 1388 (1990). When the evidence supports the trial court's findings of fact, we may reverse only when the legal conclusions drawn from these facts are erroneous. *Id.* It is the sole province of the suppression court, as finder of fact, to weigh the credibility of the witnesses. *Id.* Thus, the fact finder is free to believe all, part or none of a witnesses' testimony.

*Commonwealth v. Quiles*, 422 Pa.Super. 153, 154, 619 A.2d 291, 292 (1993) (*en banc*).

Recently, the United States Supreme Court addressed itself to the precise issue before this Court today. In *Minnesota v. Dickerson, supra*, the Supreme Court was asked to consider whether and to what extent an officer's tactile impressions may be used to justify the search of an individual whom the officer has detained pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Thus, the Court explained:

The Fourth Amendment, made applicable to the State by way of the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S.

(1991) (although Commonwealth failed to initially certify that suppression order would substantially handicap its prosecution, this Court allowed repair of the procedural default).

643[, 81 S.Ct. 1684, 6 L.Ed.2d 1081] (1961), guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Time and again, this Court has observed that searches and seizures " 'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.' " *Thompson v. Louisiana,* 469 U.S. 17, 19–20[, 105 S.Ct. 409, 410, 83 L.Ed.2d 246] (1984) (*per curiam* ) (quoting *Katz v. United States,* 389 U.S. 347, 357[, 88 S.Ct. 507, 514, 19 L.Ed.2d 576] (1967) (footnotes omitted)); *Mincey v. Arizona,* 437 U.S. 385, 390[, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290] (1978); *see also United States v. Place,* 462 U.S. 696, 701[, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110] (1983). One such exception was recognized in *Terry v. Ohio,* 392 U.S. 1[, 88 S.Ct. 1868, 20 L.Ed.2d 889] (1968), which held that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot" the officer may briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions. *Id.,* at 30[, 88 S.Ct. at 1884]; *see also Adams v. Williams,* 407 U.S. 143, 145–146[, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612] (1972). Terry further held that "when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a patdown search "to determine whether the person is in fact carrying a weapon." 392 U.S. at 24[, 88 S.Ct. at 1881]. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." *Adams, supra,* [407 U.S.] at 146[, 92 S.Ct. at 1923]. Rather, a protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or

others nearby." *Terry, supra,* [392 U.S.] at 26[, 88 S.Ct. at 1882]; *see also Michigan v. Long,* 463 U.S. 1032, 1049, and 1052, n. 16[, 103 S.Ct. 3469, 3480, and 3482, n. 16] (1983); *Ybarra v. Illinois,* 444 U.S. 85, 93–94[, 100 S.Ct. 338, 343, 62 L.Ed.2d 238] (1979). If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed. *Sibron v. New York,* 392 U.S. 40, 65–66[, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917] (1968).

\* \* \* \* \* \*

We have already held that police officers, at least under certain circumstances, may seize contraband detected during the lawful execution of a *Terry* search.... The Court in [*Michigan v. Long,* 463 U.S. 1032[, 103 S.Ct. 3469] (1983)] justified this ... holding by reference to our cases under the "plain-view" doctrine. *See Long, supra,* at 1050[, 103 S.Ct. at 3481]; *see also United States v. Hensley,* 469 U.S. 221, 235[, 105 S.Ct. 675, 683, 83 L.Ed.2d 604] (1985) (upholding plain-view seizure in context of *Terry* stop). Under that doctrine, if police are lawfully in a position from which they view and object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. *See Horton v. California,* 496 U.S. 128, 136–137[, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112] (1990); *Texas v. Brown,* 460 U.S. 730, 739[, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502] (1983) (plurality opinion). If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—*i.e.,* if "its incriminating character [is not] 'immediately apparent,'" *Horton, supra,* [496 U.S.] at 136[, 110 S.Ct. at 2307]—the plain-view doctrine cannot justify its seizure. *Arizona v. Hicks,* 480 U.S. 321[, 107 S.Ct. 1149, 94 L.Ed.2d 347] (1987).

We think that this doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain view doctrine is that if

contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point. *See Illinois v. Andreas*, 463 U.S. 765, 771[, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003] (1983); *Texas v. Brown, supra*, [460 U.S.] at 740[, 103 S.Ct. at 1542]. The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment. *See Hicks, supra*, [480 U.S.] at 326–327[, 107 S.Ct. at 1153]; *Coolidge v. New Hampshire*, 403 U.S. 443, 467–468, 469–470[, 91 S.Ct. 2022, 2038–39, 2040, 29 L.Ed.2d 564] (1971) (opinion of Stewart, J.). The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.[n3]

---

n3 "The police officer in each [case would have] had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification ... and permits the warrantless seizure." *Coolidge v. New Hampshire*, 403 U.S. 443, 466[, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564] (1971) (opinion of Stewart, J.).

*Minnesota v. Dickerson*, —— U.S. at ——, 113 S.Ct. at 2135–37. This holding is, of course, controlling in our inquiry.[2]

**2.** Neither the parties nor the trial court in the instant case in any way suggest that there is any distinction between the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution which is relevant herein. *Compare Commonwealth v. Carroll*, 427 Pa.Super. 1, 628 A.2d 398 (1993) (*en banc*) (parties briefed and argued relevant distinction between Constitutions) *with Common-*

In the present case, the trial court found that the officer was justified in his decision to stop and frisk appellee, but unjustified in continuing to search appellee's person thereafter. Under the Supreme Court's recent pronouncement in *Minnesota v. Dickerson,* we cannot agree.

 Here, as the trial court found, there existed more than ample cause to reasonably suspect that appellant was engaged in drug dealing at the time the officer encountered him. As such, we may take judicial notice of the reasonable suspicion that appellee was armed and dangerous. *See Commonwealth v. Patterson,* 405 Pa.Super. 17, 22, 591 A.2d 1075, 1078 (1991) (taking judicial notice that drug dealers are likely to be armed and dangerous). Accordingly, the trial court properly held that the officer was justified in detaining appellee and conducting a minimally intrusive pat down of his person. *See Terry v. Ohio, supra.*

 The trial court erred, however, in determining that the officer herein could do no more to appellee upon gleaning more information through the pat-down. As the *Minnesota v. Dickerson* Court has explained, the tactile impression perceived by an officer justifiably engaged in the pat-down of a suspect is an element to be considered in determining whether the officer had sufficient cause to thereafter engage in a search more intrusive than that permissible under *Terry v.*

wealth v. Peterfield, 415 Pa.Super. 313, 609 A.2d 540, *appeal denied,* 533 Pa. 609, 618 A.2d 400 (1992) (parties failed to brief and argue relevant distinction between Constitutions). The trial court, in fact, relied solely upon its interpretation of the Fourth Amendment case law in rendering its decision. *See also Commonwealth v. Harper,* 416 Pa.Super. 608, 611 A.2d 1211 (1992) (failing to address any distinction between the federal and state constitution where issue is one based solely upon federal constitution); *Commonwealth v. Marconi,* 408 Pa.Super. 601, 597 A.2d 616 (1991), *appeal denied,* 531 Pa. 638, 611 A.2d 711 (1992) (same). Accordingly, as we are not called upon to address whether any relevant distinction exists herein, we express no opinion in this regard. *See Commonwealth v. Peterfield, supra; Commonwealth v. Marconi, supra* 408 Pa.Super. at 628 n. 8, 597 A.2d at 630 n. 8 (Kelly, J., concurring); *see also Commonwealth v. Carroll, supra* (concurring opinion by Cavanaugh, J. in which Tamilia, J. and Hudock, J. joined).

*Ohio, supra.*[3] Where it is "immediately apparent" from the tactile impression that the suspect possesses contraband on his person, a seizure of the contraband is justified. *Minnesota v. Dickerson, supra.* Here, the officer articulated in detail regarding the specific nature of his perception. *See* N.T. November 21, 1991 at 14–16; 18–19. The record is, therefore, sufficient to establish that the officer's tactile impression combined with his years of experience,[4] led him to reasonably conclude that what he felt was a controlled substance. The perceived consistency and location of the package together with the surrounding circumstances combined sufficiently to betray the illegal nature of the object on appellee's person. *Compare Commonwealth v. Marconi, supra* (rock or pebble like object in pocket not sufficiently identifiable through tactile impression).. There was no need to manipulate the object, or alter in any way the justified pat-down, in order to identify the contraband. Rather, the identity of the cocaine became "immediately apparent" through only a minimally intrusive and constitutionally permissible pat-down. *Compare Minnesota v. Dickerson, supra* (officer forced to manipulate item through clothing in order to identify it). Accordingly, the seizure violated none of the appellee's rights under the Fourth Amendment.

Under the holding in *Minnesota v. Dickerson, supra,* the officer herein need not have ignored what he had probable cause to believe was true. Through a constitutionally condoned frisk of appellee's person, the officer learned that appellee possessed illegal drugs. The officer was, therefore, both justified and duty-bound to seize such contraband. It was error for the trial court to suppress such evidence. Accordingly, we reverse.

Suppression order reversed. Case remanded for proceedings consistent with this opinion.

**3.** *See also Commonwealth v. Marconi, supra* 408 Pa.Super. at 619, 597 A.2d at 624–631 (Kelly, J., concurring).

**4.** " 'A virtuoso may draw reasonable inferences and suspicion of criminal involvement that would elude an amateur.' " *Commonwealth v. Marconi, supra* at 627 n. 6, 597 A.2d at 629 n. 6 (quoting *United States v. Ceballos,* 719 F.Supp. 119, 124 (E.D.N.Y.1989).