UNITED STATES of America

v.

Rosa Marraro CRESPO, Defendant.

Crim. No. 3:CR 94–062–02.

United States District Court, M.D. Pennsylvania.

July 20, 1994.

Melinda C. Ghilardi, Federal Public Defender, Scranton, PA, for defendant.

Rosa Marraro Crespo, pro se.

Barbara Kosik Whitaker, Asst. U.S. Atty., Scranton, PA, for U.S.

### MEMORANDUM AND ORDER

CONABOY, District Judge.

Presently before the Court is Defendant's Motion For Suppression of Evidence (Doc. No. 72). The Government has responded to the motion. We have carefully reviewed their respective memorandums of law. For the reasons stated below, we will deny the motion.

### BACKGROUND

Rosa Marraro Crespo is charged in the same indictment with her half-brother, Ne-stor Ariel Soto, (Counts 1 and 2), as well as Sharon Forte, (Counts 1, 3, 6 and 7), and her children, Annetta (Counts 1, 4 and 8), and Brian Forte (Count 3). The Fortes entered guilty pleas in this case on June 13, 1994.

Codefendant Soto was indicted on the same charges as Crespo, i.e., one count each of conspiracy to possess with intent to distribute and distribution of cocaine—Count I, and possession with intent to deliver cocaine—Count II. Crespo and Soto were arrested by the Pennsylvania State Police and Hazelton Police on December 23, 1993, in a car located outside the Forte residence at 868 North Vine Street in Hazelton.

The chronicle of the aforementioned arrest is strategically set forth by both the prosecution and the defense. We mean to say that some areas of the account are vague and it may be that they are purposefully vague. Nevertheless, the following appears to be an accurate representation of what transpired on December 23, 1993.

As a result of confidential source information that a Puerto Rican male known as Ariel was transporting quantities of cocaine from Connecticut to Hazelton, Pennsylvania, on an every other day basis, officers of the Pennsylvania State Police initiated surveillance of the Forte residence on December 23, 1993. During the surveillance, an officer contacted a confidential informant by car phone and was advised that Ariel was running late but would arrive within the hour.

Approximately fifty minutes later, this officer identified and observed one Elizabeth Brotzman exit the residence. Being aware of outstanding warrants for Brotzman, he proceeded to confront and place Brotzman under arrest. Shortly thereafter, a maroon colored Chevrolet bearing a Connecticut registration pulled up in front of the Forte residence. Brotzman told the officer "this is Ariel".

At that point, the officers approached the car. The officers have stated and government counsel has noted that the car was driven by Crespo. Soto was the passenger. Although it is not clear whether it was Trooper Hischar or Detective Harry, both parties agree that an officer noticed Crespo withdraw an unknown item from her pants

and place it in her left jacket pocket. The Defendant states that Trooper Hischar and/or Detective Harry removed this item from Crespo's pocket without telling us if there was any verbal exchange. The government however, tells us that Defendant Crespo was instructed to place her hands on the vehicle and when she did, the instructing officer observed a baggie containing white powder in her left coat pocket. Both agree that the officer removed the baggie. The officer also noticed that her pants were unbuttoned and unzipped.

Defendant would have us believe that Crespo was "immediately handcuffed and transported to the Hazelton General Hospital Emergency Room ... where she was searched by an unidentified female nurse." The government states that when the officer removed the baggie he then performed a field test. When the substance tested positive for cocaine, both Crespo and Soto were placed under arrest. Crespo was then transported to Hazelton General where a female nurse did, if fact, conduct a further search of her person (both clothing and body cavities). This search resulted in the discovery of another bag of cocaine. Soto and Crespo were finally transported to the Hazelton Police Department for processing.

## DISCUSSION

The Defendant attacks the validity of the seizure by Trooper Hischar and Detective Harry as well as the seizure by the unidentified female nurse. Specifically, with regard to the officers' seizure, Defendant asserts that she was not under arrest, was not handcuffed and was not questioned at the time of seizure. She further avers the officers had no authority to search her jacket pockets, her pants or any article of clothing because she was not under arrest.

### I. Seizure By The Trooper

■ Because of the information conveyed to them by their informant, the officers knew that a Puerto Rican male named Ariel would be arriving at the Forte residence to deliver cocaine to the Fortes. In addition, their rather successful surveillance had earlier delivered to them not only a wanted criminal but one that could identify and thereby confirm the individual named Ariel. It is plain to us, upon arrival of the Connecticut marked Chevrolet, that the officers had a "reasonable and articulable suspicion" that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 21 & 30, 88 S.Ct. 1868, 1879–80, 1884, 20 L.Ed.2d 889 (1968).[1]

There is nothing unusual about two individuals pulling up in front of a house in a residential neighborhood. But our scenario is not that simple. The house was a suspected drug trafficking house in which three members of the occupying family were suspected of either purchasing, using, distributing, or selling drugs. The individuals who drove up were suspected drug dealers, at the very least, drug couriers. And finally, the car that appeared on the surveillance scene did, in fact, bear a Connecticut registration and plate. Such information, albeit somewhat superficial, did confirm the officers' informant's report of source origin and every other day delivery. We believe the officers would have been remiss in their duties of drug trafficking detection if they failed to investigate this clockwork behavior, especially in light of what they apparently regarded as a reliable "tip-off."

The crux of this case, however, is not the propriety of Trooper Hischar's or Detective Harry's taking steps to investigate Defendant's inconspicuous but predictable behavior, as we will defer to the officers' judgment given their experience and the totality of the circumstances, but rather, whether there was justification for the officer's invasion of Crespo's personal privacy when he removed the cocaine from Crespo's jacket.

■ Our analysis begins once we place the officers at the car. Again we must look to the totality of the circumstances. Were this a surveillance of a money laundering or gambling operation, our analysis would be

---

1. In determining whether the officer acted upon reasonable suspicion, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the inferences which he is entitled to draw from the facts in light of his experience. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).

different. Our inquiry would be whether the officer reasonably believed the person whom he was dealing with was armed and dangerous. *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884. But this was an observation of a drug delivery and potential drug transaction. This, in and of itself, is cause for concern and belief enough that Crespo and/or Soto was armed and dangerous. We join the growing number of courts who have taken judicial notice of the fact that drug dealers are likely to be armed and dangerous. *See United States v. Adams*, 759 F.2d 1099, 1109 (3rd Cir.1985); *United States v. Morales*, 549 F.Supp. 217 (S.D.N.Y.1982) (to dealers in narcotics, firearms are as much tools of the trade as are most commonly recognized articles of narcotics paraphernalia); *United States v. Barlin*, 686 F.2d 81 (2nd Cir.1982) (an officer's actions should be measured against a background which includes the violent nature of narcotics crimes).

▪ As the officers approached the car, one of them observed Crespo withdraw something (an unknown object) from her pants and place it in her left coat pocket. Although we cannot tell from the record before us what, if anything, was said by the officers once they reached the car, Crespo's movement necessarily preempted and precluded the usual requirement that the officer first identify himself and make reasonable inquiries. At this point, the officer that had approached Crespo would have been justified in carrying out a Terry "pat down". Indeed, when an unknown object is placed in a sus-

pected drug trafficker's pocket, there is cause for alarm. A perceived threat to the officer's safety is more than reasonable.

From the briefs before us, it appears that before there was any pat down, the officer logically first requested that Crespo step outside of the car and place her hands on the car. Crespo complied. At that moment we learn that the officer saw a baggie containing a white powdery substance in Crespo's left jacket pocket. Although a pat down was still a permissible next step, our Terry analysis need not develop into one that addresses whether the plastic baggie was a legitimate fruit of the restricted search because the officer identified it visually before any pat down.[2] This fact places our analysis squarely within the confines of the Plain View Doctrine.

▪ The Plain View Doctrine permits the warrantless seizure of evidence in a law enforcement officer's plain view when (1) the officer seizing the evidence "did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed," (2) the incriminating nature of the evidence is "immediately apparent," and (3) the officer has "a lawful right of access to the object itself." *Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990).[3]

▪ In the present case, the officers did not violate the Fourth Amendment in arriving at the place from which the evidence could be viewed as they were conducting a

---

**2.** Even if there had been no viewing of the baggie before the pat down and the officer uncovered a baggie as a result of a pat down, it appears, at least in the Third Circuit, that such a fruit of the officer's limited Terry search would not have been suppressed. *See United States v. Anderson*, 859 F.2d 1171, 1177 (3rd Cir.1988). *See also United States v. McGlory*, 968 F.2d 309, 343 (3rd Cir.1992); *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (The police officer in each case would have had a prior justification for an intrusion in the course of which he came across a piece of evidence incriminating the accused); *Minnesota v. Dickerson*, —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Commonwealth v. Johnson*, 429 Pa.Super. 158, 631 A.2d 1335, 1339–40 (1993) (With regard to tactile discoveries of contraband, if a police officer lawfully pats down a suspect's outer clothing and feels an object

whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons). *Cf. Sibron v. New York*, 392 U.S. 40, 65–66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968) (If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed).

**3.** Although the officer in this case inadvertently noticed the cocaine filled baggie in Crespo's jacket pocket, *Horton* holds that the discovery of evidence in "plain view" need not be inadvertent, as a plurality of the Supreme Court had previously held in *Coolidge v. New Hampshire*, 403 U.S. 443, 469, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 (1971).

mere investigatory detention or Terry stop. As we have stated, the officer's reasonable articulable suspicion that a crime was taking or was about to take place rightfully brought them within armslength of the Defendant, a distance that would permit viewing of the Defendant's person and the open area of the vehicle. The Defendant's sudden movement gave rise to a reasonable (and now judicially presumptive) belief that Crespo was armed and dangerous. This gave the officers the go ahead to conduct a pat down in order to insure their safety. This too, created a viewpoint from which the officer could plainly view the baggie of cocaine.

In addressing the focal point of the plain view itself, it is obvious, given the training and experience of the officers, that the viewing officer recognized the white powdery substance as cocaine. It can therefore be said that it was immediately apparent to the viewing officer that he had incriminating evidence before him.

With regard to the aforementioned third prong of the plain view doctrine, that the officer has "a lawful right of access to the object . .," we note that access, unlike in the *Horton* case, is not in question. That case involved the seizure of contraband in a home that came about because a search was authorized by a warrant. The seizure however, was authorized by the plain view doctrine. These facts make the case at hand distinguishable.[4]

 The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point.

*See United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *Illinois v. Andreas,* 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983); *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment. *See Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Given the facts that the observation of the cocaine took place on the street, the officer had a right to be where the evidence was plainly viewed, and the dissipation of the evidence was highly probable had the officer attempted to procure a warrant, we hold that the taking of the baggie by the officer for field testing was a permissible seizure within the context of a *Terry* stop.

## II. Seizure By A Nurse Under The Direction Of An Officer

 In order for an arrest to be legal, it must be sustained by probable cause. *See Wong Sun v. United States,* 371 U.S. 471, 479, 83 S.Ct. 407, 412–13, 9 L.Ed.2d 441 (1963). Probable cause to arrest and initiate criminal proceedings exists where the arresting officer has knowledge of facts and circumstances sufficient to permit a prudent person of reasonable caution to believe that the person arrested has committed an offense. *Huffaker v. Bucks County Dist. Attorney's Office,* 758 F.Supp. 287, 291 (E.D.Pa. 1991) *citing Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979). *See also United States v. Cruz,*

---

4. Unlike *Horton,* the case at bar involves a plain viewing of contraband in the street and the very real possibility of its disappearance. In *Horton,* the third prong, 'a lawful right of access', is set forth to temper the enthusiasms of officers by assuring that a specific search, i.e. one prescribed by a warrant naming places to be searched and things to be seized, does not become a general and limitless search. Specifically, the officer's affidavit for a search warrant referred to police reports that described weapons as well as the ill-gotten booty, but the warrant issued by the Magistrate only authorized a search for the 'proceeds.' Justice Stevens noted that the third prong "is simply a corollary of the familiar principle [ ] that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances'." *Horton,* 496 U.S. at 137 n. 7, 110 S.Ct. at 2308.

910 F.2d 1072, 1076 (1990); *Edwards v. City of Philadelphia*, 860 F.2d 568, 571 n. 2 (3rd Cir.1988); *Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979). Further, "law enforcement authorities are permitted and expected to draw reasonable inferences based upon their knowledge and experience." *Id.* quoting *United States v. Filiberto*, 712 F.Supp. 482, 485 (E.D.Pa.1989).

 In the present case, it is hard for us to believe that upon plain viewing prior to the intended pat down, the officer did not immediately recognize the substance in the plastic baggie located in Crespo's jacket pocket. Nevertheless, the field test taken at the scene proved positive for cocaine. This, in and of itself, constitutes probable cause to arrest. A lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have. *United States v. Schecter*, 717 F.2d 864, 868 (3rd Cir.1983) *quoting New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). *See also United States v. Carter*, 585 F.Supp. 167, 172 (W.D.Pa.1984); *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969) (A lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area. Such searches have long been considered valid because of the need to remove any weapons the [the arrestee] might seek to use in order to resist arrest or effect his escape and the need to prevent the concealment or destruction of evidence). Therefore, the search incident to Crespo's arrest was proper.

The Defendant contends that because of the irregular manner and remote place of the search, the evidence seized therefrom should be suppressed. Specifically, Crespo asserts that the additional bag of cocaine seized by an unidentified nurse at the Hazelton General Hospital should be suppressed because the search and seizure was not conducted by a law enforcement officer and it was not conducted at the time or the scene of the arrest.

Let us recall that when the officer retrieved the first bag of cocaine from Defendant Crespo, he observed that her pants were both unbuttoned and unzipped. The government maintains that the reason for transporting Crespo to a hospital was "to permit the search of Crespo's person to be conducted by a female." This, they assert, minimized embarrassment of Crespo and safeguarded the officers against unfounded claims of harassment. In light of the nature of the intrusion, the very real possibility of suit, and the fact that a medical facility is conducive to this type of search for both health and sanitary reasons, we feel this argument is not in the least bit unreasonable.

 The fact that the search and seizure did not take place until after Crespo's arrival at the hospital is of no constitutional significance. It is plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention. *United States v. Edwards*, 415 U.S. 800, 803, 94 S.Ct. 1234, 1237, 39 L.Ed.2d 771 (1974). *See also United States v. Thrower*, 442 F.Supp. 272, 280–81 (E.D.Pa.1977). Although the hospital was not the ultimate place of detention, the pertinent case law speaks to the delay in time. It stands to reason that if the search incident to arrest can be carried out at the place of detention as well as at the scene of arrest, then surely it can be carried out somewhere and sometime in between. In absence of an inexplicable detour or excessive delay, we hold that the search of Crespo's person, conducted at the hospital shortly after a valid custodial arrest, at the behest of an officer, did not violate her Fourth Amendment rights. The evidence discovered during the course of that search need not be suppressed.

## CONCLUSION

Based on the reasons stated above, the Defendant's Motion to Suppress the evidence obtained by the officer at the scene of the arrest, but prior to arrest, *and* the evidence seized by the nurse at the hospital is DENIED. The Clerk of Court is directed to mark the docket sheet accordingly.