### Commonwealth v. Albarran

288

C.P. of Berks County, no. CP-06-CR-0000373-2008.

*Jay M. Nigrini,* for appellant.
*James T. Goldsmith,* for appellee.

BUCCI, *J.,* October 15, 2008—

## PROCEDURAL HISTORY

In a bench trial held on July 25, 2008, Jose Gonzalez Albarran (appellant) was found guilty of possession with intent to deliver a controlled substance,[1] possession of a controlled substance,[2] possession of drug paraphernalia,[3] driver's license to be required[4] and registration and certificate to be required.[5]

This court sentenced the appellant, on July 25, 2008, to nine to 36 months for possession with intent to distribute a controlled substance with a concurrent sentence of two to 12 months for possession of drug paraphernalia, for an aggregate sentence of nine to 36 months.

On August 21, 2008, appellant filed a timely notice of appeal to the Pennsylvania Superior Court. On August 28, 2008, this court ordered appellant to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rules of Appellate Procedure 1925(b). Appellant filed a timely concise statement on September 3, 2008, alleging the court erred:

"(1) In denying appellant's motion to suppress physical evidence after the arresting officer illegally searched and seized money from the appellant's pockets and then failed to obtain a knowing and voluntary consent to search the appellant's vehicle."

---

1. 35 Pa.C.S. §780-113(a)(30).
2. 35 Pa.C.S. §780-113(a)(16).
3. 35 Pa.C.S. §780-113(a)(32).
4. 75 Pa.C.S. §1501(a).
5. 75 Pa.C.S. §1301(a).

## FACTUAL BACKGROUND

On January 1, 2008, Officer Christopher Cortazzo was on routine patrol in the City of Reading, Berks County. N.T. at 3-4. At approximately 9 p.m., Officer Cortazzo stopped the appellant's vehicle in the 800 block of North 11th Street of the city because the vehicle registration sticker expired the previous day. N.T. at 4-5. As Officer Cortazzo approached the vehicle on foot, appellant stuck his head out of the driver's side window of his vehicle and yelled, "Hey, Cortazzo. You know me from Topher's Cafe." Officer Cortazzo did not recognize appellant. However, Officer Cortazzo is familiar with the illegal drug activity that occurs in Topher's Cafe.

Just prior to asking appellant for identification, Officer Cortazzo smelled marijuana emanating from the vehicle. N.T. at 7. He also saw that appellant was shaking and his demeanor, in general, was "peculiar and suspicious". N.T. at 7. Thereafter, Officer Cortazzo asked appellant to exit his vehicle. N.T. at 8. After he exited his vehicle, appellant attempted to reach in his pants pockets on three occasions. N.T. at 9. Officer Cortazzo asked appellant to keep his hands out of his pockets and to "relax" numerous times. Concerned for his safety, Officer Cortazzo conducted a *Terry* frisk of appellant. During the course of the patdown, Officer Cortazzo discovered a razor-blade-style knife and nearly $3,000 in U.S. currency in appellant's pants pockets.

Then, while speaking with the passenger of the vehicle, Officer Cortazzo observed a white plastic shopping bag containing a box of Ziploc bags and a brick-shaped object wrapped tightly in a plastic bag on the back seat

of the vehicle. N.T. at 10-11. Officer Cortazzo asked appellant if there was anything illegal in the vehicle. Appellant told Officer Cortazzo, that he did not have anything illegal. Appellant then offered Officer Cortazzo the opportunity to search the vehicle. Incident to defendant's consent, Officer Cortazzo search the vehicle and retrieved the two suspicious plastic shopping bags containing a brick of marijuana, a digital scale and a box of Ziploc bags. N.T. at 12-14. When Officer Cortazzo placed the marijuana and contraband on the roof of the vehicle, appellant fled on foot. N. T. at 15. Officer Uczynski pursued and later apprehended appellant.

## DISCUSSION

Appellant argues this court erred by denying appellant's pretrial motion to suppress evidence of a brick of marijuana and numerous items of contraband found on his person and in his vehicle.

In reviewing a decision to admit or suppress evidence, the reviewing court must ascertain whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Ryerson,* 817 A.2d 510, 513 (Pa. Super. 2003) citing *Commonwealth v. Johnson,* 734 A.2d 864, 869 (Pa. Super. 1999). The reviewing court should only consider the evidence of the Commonwealth and any defense evidence which remains uncontradicted when read in the context of the entire record. *Ryerson,* 817 A.2d at 513.

This court held an omnibus pretrial hearing on April 24, 2008. After hearing testimony and considering the

arguments of counsel, the court wrote findings of fact and conclusions of law denying the appellant's motion to suppress the evidence. This court hereby incorporates by reference its findings of fact and conclusions of law. However, the court will briefly summarize its conclusions in support of its decision to deny appellant's motion to suppress the evidence.

Pursuant to the valid traffic stop, Officer Cortazzo justifiably asked the appellant to step out of his vehicle for officer safety because the traffic stop occurred at night in a high-crime area; because the defendant appeared very nervous and his hands were shaking; and because defendant said he frequented Topher's Cafe which Officer Cortazzo knows is a place where illegal drug sales occur. See *Commonwealth v. Van Winkle,* 880 A.2d 1280, 1285 (Pa. Super. 2005), citing *Commonwealth v. Freeman,* 563 Pa. 82, 757 A.2d 903 (2000) and *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), for the proposition that after a valid traffic stop the police do not need any level of suspicion to ask the occupants to step out of the vehicle.

Then Officer Cortazzo conducted a *Terry* frisk of appellant. A law enforcement officer may pat down an individual detained for investigative purposes if the officer has reasonable suspicion that the individual is presently armed and dangerous. *Commonwealth v. E. M.,* 558 Pa. 16, 28, 735 A.2d 654, 661 (1999), citing *Terry v. Ohio,* 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968). Nevertheless, a *Terry* frisk, should be limited to what is necessary for the discovery of weapons or immediately identifiable contraband. See *e.g., In re J.N.,* 878 A.2d 82 (Pa. Super. 2005); *Com-*

*monwealth v. Johnson,* 429 Pa. Super. 158, 631 A.2d 1335 (1993).

Although Officer Cortazzo was justified in patting down appellant to conduct a limited frisk for weapons and contraband, the seizure of the $2,890 from the defendant's pocket exceeded the permissible scope of a *Terry* frisk. There is no evidence on the record that Officer Cortazzo had reason to believe that the currency was contraband or a weapon. Therefore, the court concludes that the seizure of the $2,890 was unconstitutional. However, the Commonwealth argues that the inevitable discovery rule permits the Commonwealth to overcome the taint created by the warrantless seizure of the cash.

The inevitable discovery rule, provides that illegally seized evidence may be admissible, if the Commonwealth can establish "that ultimately or inevitably [the evidence] would have been discovered by lawful means." *Commonwealth v. Ariondo,* 397 Pa. Super. 364, 378, 580 A.2d 341, 348 (1990), citing *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The Pennsylvania Superior Court held, in *Van Winkle,* that currency illegally seized from the defendant during a search of his person was nevertheless admissible, under the inevitable discovery rule, since it would have been found pursuant to a search incident to arrest for possession of contraband seized from the defendant's vehicle. *Van Winkle,* 880 A.2d at 1285.

In *Van Winkle,* after initiating a valid traffic stop, the arresting police officer frisked the defendant for weapons and found $3,385 on his person. *Van Winkle,* 880 A.2d at 1282, 1285. Thereafter, the police officer discovered

30 grams of cocaine and a small amount of marijuana in the car. *Id.* Similarly, in this case, Officer Cortazzo seized $2,890 cash from the defendant's person, and later found a brick of marijuana and other contraband in the vehicle. In both instances, the search of the vehicle was valid and the currency would have ultimately been found during a search incident to arrest for the contraband found in the car. *Id.* Consequently, the $2,890 is admissible evidence under the inevitable discovery rule.

During the course of the traffic stop Officer Cortazzo used his flashlight to see into the interior of appellant's vehicle. In the back seat, he observed, in plain view and from a lawful vantage point, two plastic bags—one containing Ziploc bags and the other containing a brick-shaped object. Based on his training and experience, he reasonably believed the object to be a brick of marijuana. Consequently, the seizure of the marijuana, Ziploc bags and scale were incident to a valid search under the plain view doctrine.

Even if the plain view doctrine is not applicable, nevertheless the search of the car was constitutionally permissible per the defendant's consent. Appellant's consent followed a lawful detention. Officer Cortazzo had reasonable suspicion to stop appellant's car for violation of the Vehicle Code. Furthermore, Officer Cortazzo had reasonable grounds to suspect that appellant was involved in illegal drug activity because of the odor of marijuana emanating from the vehicle, the appellant's suspicious actions in a high-crime area and appellant's association with an establishment known for illegal drug trafficking. Therefore, appellant was legally detained pursuant to the traffic violation and for suspicion of illegal drug activity.

Defense counsel argues, citing *Commonwealth v. Free-man,* 563 Pa. 82, 757 A.2d 903 (2000), and *Commonwealth v. Strickler,* 563 Pa. 47, 757 A.2d 884 (2000), that the initial traffic stop concluded and a second investigative detention occurred when Officer Cortazzo reached into appellant's pockets. In both, *Freeman* and *Strickler,* the arresting officer returned the defendant's license and concluded the traffic stop before requesting consent to search the vehicle without reasonable suspicion or probable cause. *Freeman,* 563 Pa. at 85, 90, 757 A.2d at 905, 908; *Strickler,* 563 Pa. at 53, 757 A.2d at 886-87. The facts at bar are distinguishable. Here, in contrast, Officer Cortazzo, under the reasonable belief that drug activity was afoot, conducted his search of the vehicle prior to concluding the lawful traffic stop.

Officer Cortazzo was the only officer who spoke with appellant; no official weapons were drawn; and appellant was not restrained in any way. The interaction occurred on a city street, in a well-populated area. The defendant is 30 years old, of at least normal intelligence. Moreover, the consent to search the vehicle was not made in response to a request from Officer Cortazzo, but was rather an unsolicited offer to search the vehicle on the part of appellant. Based on a totality of the circumstances, the Commonwealth has met its burden. These factors prove that the consent was voluntary and not the product of duress, coercion or incidentally, the seizure of currency.

Because the marijuana and contraband were in plain view and appellant voluntarily consented to the search of his vehicle, the court requests that this allegation of error be denied.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that appellant's appeal be denied and his judgment of sentence affirmed.

---

BUCCI, *J.,* June 16, 2008—

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN DISPOSITION OF THE DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE

(1) Defendant is charged with possession with intent to deliver a controlled substance to wit; marijuana; possession of marijuana; and possession of drug paraphernalia, and related conspiracy charges. All of which arose out of the search of the defendant and the vehicle he operated on January 1, 2008.

(2) On January 1, 2008 at approximately 9 p.m. Officer Christopher Cortazzo of the Reading Police Department was on routine patrol in the 800 block of North 11th Street in the City of Reading, Berks County, Pennsylvania.

(3) At that time and place Officer Cortazzo observed and stopped a vehicle operated by the defendant because he observed that the vehicle registration sticker had expired on midnight of December 31, 2007 (21 hours earlier).

(4) The 800 block of North 11th Street is known to Officer Cortazzo to be a high-drug, high-crime area. This block is also associated with illegal gang activity.

(5) As Officer Cortazzo approached the driver side of the vehicle, the defendant who was the operator of the vehicle stuck his head out of the driver's side window and called to Officer Cortazzo by name stating, "Hey, Cortazzo. You know me from Topher's Cafe." Officer Cortazzo did not recognize the defendant. However, the defendant's admission raised Officer Cortazzo's suspicion because Topher's Cafe is associated with illegal drug activity and sales.

(6) When Officer Cortazzo reached the driver's side window, he smelled the distinct odor of marijuana emanating from the car (he is very familiar with the odor of marijuana based upon his training and experience as a police officer).

(7) When Officer Cortazzo asked the defendant for identification, the defendant responded that he did not have any identification on his person.

(8) Officer Cortazzo testified that the defendant appeared nervous and his hands were shaking.

(9) Officer Cortazzo then asked the defendant to step out of the vehicle.

(10) While speaking to the defendant outside of the vehicle, the defendant repeatedly attempted to put his hands in his pockets. Officer Cortazzo told the defendant three times not to put his hands in or near his pockets because Officer Cortazzo was concerned for his safety.

(11) Officer Cortazzo then conducted a patdown of the defendant's clothing and reached into the defendant's pocket and seized $2,890 in cash from the defendant's

pants pocket. Officer Cortazzo asked the defendant where he got so much money and the defendant responded "I worked my ass off."

Officer Cortazzo then shined his flashlight into the interior of the vehicle and observed a white translucent plastic shopping bag containing a box of Ziploc bags and observed what appeared to be a brick-shaped object wrapped tightly in another plastic bag. Officer Cortazzo testified that the brick-shaped object appeared to him to be a brick of marijuana based upon his training and experience. However, Officer Cortazzo did not enter the vehicle or seize the suspected contraband at this point in the encounter.

(12) Officer Cortazzo then asked the defendant if there was anything illegal in the car. The defendant responded that there was nothing illegal in the car and the defendant offered Officer Cortazzo the opportunity to search the car.

(13) After attaining the defendant's consent, Officer Cortazzo searched the car and seized the plastic shopping bag which did, indeed, contain a brick of marijuana and a digital scale.

(14) Officer Cortazzo retrieved the said items from the car and placed the scale and the Ziploc bags on the roof of the car. When the defendant saw this he fled on foot and was chased and apprehended by Officer Uczynski.

(15) The defendant was arrested and searched. Two cell phones and his identification were seized from his person pursuant to the search incident to his arrest.

## CONCLUSIONS OF LAW

(16) The courts have identified three levels of interaction between citizens and the police. "The first of these is a 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an 'investigative detention', must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause." *Commonwealth v. Pakacki,* 587 Pa. 511, 519, 901 A. 2d 983, 987 (2006). (internal citations omitted)

(17) An investigative detention occurs when the police temporarily detain an individual by means of physical force or a show of authority for investigative purposes. *Commonwealth v. Barber,* 889 A.2d 587, 592 (Pa. Super. 2005). Police may stop and detain a vehicle where there is reasonable suspicion of criminal activity or the police have observed a violation of the Motor Vehicle Code. *Commonwealth v. Polo,* 563 Pa. 218, 225, 759 A.2d 372, 376 (2000).

(18) On December 31, 2007 an investigative stop occurred between Officer Cortazzo and the defendant when Officer Cortazzo conducted a valid traffic stop of the defendant's vehicle because he observed the expired vehicle registration sticker. 75 Pa.C.S. §6308(b).

(19) Pursuant to the valid traffic stop, Officer Cortazzo was justified in asking the defendant to step out of

the car for his safety because the traffic stop occurred at night in a high-crime area; because the defendant appeared very nervous and his hands were shaking; and because defendant said he frequented Topher's Cafe which Officer Cortazzo knows is a place where illegal drug sales occur. See *Commonwealth v. Van Winkle,* 880 A.2d 1280, 1285 (Pa. Super. 2005), citing *Commonwealth v. Freeman,* 563 Pa. 82, 757 A.2d 903 (2000) and *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) for the proposition that after a valid traffic stop the police do not need any level of suspicion to ask the occupants to step out of the vehicle.

(20) "As a general rule, a search or seizure without a warrant is deemed unreasonable for constitutional purposes." *Commonwealth v. Holzer,* 480 Pa. 93, 102, 389 A.2d 101, 106 (1978), quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 454, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

(21) However, a law enforcement officer may pat down an individual detained for investigative purposes if the officer has reasonable suspicion that the individual is presently armed and dangerous. *Commonwealth v. E.M.,* 558 Pa. 16, 28, 735 A.2d 654, 661 (1999), citing *Terry v. Ohio,* 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968). Nevertheless, a *Terry* frisk, should be limited to what is necessary for the discovery of weapons or immediately identifiable contraband. See *e.g., In re J.N.,* 878 A.2d 82 (Pa. Super. 2005); *Commonwealth v. Johnson,* 429 Pa. Super. 158, 631 A.2d 1335 (1999).

(22) Although Officer Cortazzo was justified in patting down the defendant to conduct a limited frisk for weap-

ons and contraband, the seizure of the $2,890 from the defendant's pocket exceeded the permissible scope of a *Terry* frisk. There is no evidence on the record that Officer Cortazzo had reason to believe that the currency was contraband or a weapon. Therefore, the court concludes that the seizure of the $2,890 was unconstitutional.

(23) However, the Commonwealth argues that the inevitable discovery rule permits the Commonwealth to overcome the taint created by the warrantless seizure of the cash. To put plainly, the cash would have been found after the lawful search of the defendant incident to his arrest for the contraband found in the car.

(24) The inevitable discovery rule, provides that illegally seized evidence may be admissible, if the Commonwealth can establish "that ultimately or inevitably [the evidence] would have been discovered by lawful means." *Commonwealth v. Ariondo,* 397 Pa. Super. 364, 378, 580 A.2d 341, 348 (1990), citing *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

(25) The Pennsylvania Superior Court held, in *Van Winkle,* that currency illegally seized from the defendant during a search of his person was nevertheless admissible, under the inevitable discovery rule, since it would have been found pursuant to a search incident to arrest for possession of contraband seized from the defendant's vehicle. *Id.* at 1285.

In *Van Winkle,* after initiating a valid traffic stop, the arresting police officer frisked the defendant for weapons and found $3,385 on his person. Thereafter, the police officer discovered 30 grams of cocaine and a small

amount of marijuana in the car. Similarly, in this case, Officer Cortazzo seized $2,890 cash from the defendant's person, and later found a brick of marijuana and other contraband in the vehicle. In both instances, the search of the vehicle was valid and the currency would have ultimately been found during a search incident to arrest for the contraband found in the car. *Id.* at 1282, 1285.

(26) Consequently, the $2,890 is admissible evidence under the inevitable discovery rule.

(27) The Pennsylvania Supreme Court has stated, "under the plain view doctrine, the warrantless seizure of . . . evidence which is in plain view is permissible when two criteria are met. First, the evidence must be seen from a lawful vantage point. Second, it must be immediately apparent . . . that the object observed is incriminating evidence." *Commonwealth v. Ellis,* 541 Pa. 285, 297, 662 A.2d 1043, 1049 (1995). A police officer may view the interior of a car in the same fashion as any private citizen. *Commonwealth v. Petroll,* 558 Pa. 565, 576, 738 A.2d 993, 999 (1999). Further, nothing precludes a police officer from using a flashlight to bring objects into plain view. *Commonwealth v. Milyak,* 508 Pa. 2, 6, 493 A.2d 1346, 1348 (1985).

(28) During the course of the traffic stop Officer Cortazzo used his flashlight to see into the interior of the defendant's vehicle. In the back seat, he observed, in plain view and from a lawful vantage point, two plastic bags—one containing Ziploc bags and the other containing a brick-shaped object. Based on his training and experience, he reasonably believed the object to be a brick of marijuana. Consequently, the seizure of the

marijuana, Ziploc bags and scale were incident to a valid search under the plain view doctrine.

(29) Even if the plain view doctrine is not applicable, nevertheless the search of the car was constitutionally permissible per the defendant's consent.

(30) Consent is an exception to the warrant requirement. The Commonwealth bears the burden of establishing voluntary consent. The first issue is whether the defendant was legally or illegally detained. For the legal detention, the Commonwealth must only prove voluntary consent. However, for an illegal detention of a defendant, the Commonwealth must prove that: (1) the consent was voluntary and (2) the consent was not the product of the illegal detention. *Commonwealth v. Reid,* 571 Pa. 1, 26, 811 A.2d 530, 544 (2002).

(31) Here, the defendant's consent followed a lawful detention. Officer Cortazzo had reasonable suspicion to stop the defendant's car for violation of the Vehicle Code. Furthermore, Officer Cortazzo had reasonable grounds to suspect that the defendant was involved in illegal drug activity because of the odor of marijuana emanating from the vehicle, the defendant's suspicious actions in a high-crime area and the defendant's association with an establishment known for illegal drug trafficking. Therefore, the defendant was legally detained pursuant to the traffic violation and for suspicion of illegal drug activity.

(32) Defense counsel argues, citing *Freeman* and *Strickler,* that the initial traffic stop concluded and a second investigative detention occurred when Officer Cortazzo reached into the defendant's pockets. *Commonwealth v. Freeman,* 563 Pa. 82, 757 A.2d 903 (2000);

*Commonwealth v. Strickler,* 563 Pa. 47, 757 A.2d 884 (2000). However, in each of the cases cited, the arresting officer returned the defendant's license and concluded the traffic stop before requesting consent to search the vehicle without reasonable suspicion or probable cause. *Freeman,* 563 Pa. at 85, 90, 757 A.2d at 905, 908; *Strickler,* 563 Pa. at 53, 757 A.2d at 886-87. Here, in contrast, Officer Cortazzo, under the reasonable belief that drug activity was afoot, conducted his search of the vehicle prior to terminating the lawful traffic stop.

(33) This court also notes that although the seizure of the currency was initially unconstitutional, it did not taint the defendant's consent. The "illegal seizure" referred to in *Reid* is not the seizure of evidence, but rather the illegal detention of a person. *Id.* at 544. Therefore, as already discussed, here, the defendant was legally detained.

(34) Because this court finds that the defendant was legally detained, the Commonwealth need only prove that the consent was voluntary.

(35) "If a person voluntarily consents to a search, evidence found as a result of that search is admissible .... The consent, however, must be given freely, specifically, unequivocally and voluntarily. The question whether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Commonwealth v. Washington,* 438 Pa. Super. 131, 136-37, 651 A.2d 1127, 1130 (1994). (citations omitted) In determining the voluntariness of the consent "[a] reviewing court should evaluate the

characteristics of the accused, the interaction between the accused and the police, and assess how a reasonable person in the accused's shoes would have reacted to that interaction." *Reid,* 811 A.2d at 546. (citations omitted)

(36) Officer Cortazzo was the only officer who spoke with the defendant; no official weapons were drawn; and the defendant was not restrained in any way. The interaction occurred on a city street, in a well-populated area. The defendant is 30 years old, of at least normal intelligence and possesses experience in the criminal justice system related to drug trafficking. Moreover, the consent to search the vehicle was not made in response to a request from Officer Cortazzo, but was rather an unsolicited offer to search the vehicle on the part of defendant. Based on a totality of the circumstances, the Commonwealth has met its burden. These factors prove that the consent was voluntary and not the product of duress, coercion or incidentally, the seizure of currency.

(37) Therefore, the defendant's motion to suppress the $2,890 cash, as well as the contraband seized from his car, must be denied.

(38) The court notes that the defendant's omnibus pretrial motion for relief seeks suppression of any statements made by the defendant during the course of the investigation, including a statement made by the defendant to Officer Cortazzo, wherein the defendant told Officer Cortazzo that he fled the police because he knew that the bag contained marijuana. However, this evidence was not adduced at the time of the suppression hearing. Therefore the court will not at this time address the motion to suppress the statements without prejudice.

The court will enter the following order:

ORDER

And now, June 16, 2008, in consideration of the defendant's omnibus pretrial motion for relief it is hereby ordered and decreed that the defendant's motion to suppress physical evidence is hereby denied. Defendant's motion to suppress his statements to the police shall be held in abeyance.