**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Calvin SPEARS, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 20, 1999.
Filed Dec. 20, 1999.

---

Peter J. Lesh, Philadelphia, for appellant.

Catherine Marshall, Asst. Dist. Atty., Philadelphia, for Commonwealth, appellee.

Before FORD ELLIOTT and JOYCE, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 Calvin Spears appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County. We reverse and remand for a new trial.

¶ 2 On September 23, 1994, at approximately 3:22 a.m., Philadelphia Police Officer Kenneth Hermes was in his patrol car which was parked on the 700 Block of West Huntingdon Avenue in Philadelphia. While parked at that location, Officer Hermes observed several people gathering on the corner of Ninth Street and Huntingdon Avenue. Officer Hermes began surveillance of the area using his binoculars. While conducting surveillance on the area, Officer Hermes noticed a Buick station wagon parked on the northwest corner of Ninth and Huntingdon. He observed, further, that people would walk up to the station wagon and hand money to the driver of the vehicle through the passenger side window. The driver of the vehicle would then pass what Officer Hermes believed to be narcotics, back to the person who handed over the money. Officer Hermes observed this type of transaction on three occasions that morning.

¶ 3 After witnessing the third transaction, Officer Hermes drove toward the corner with his overhead lights on. At that time, the Buick station wagon accelerated westbound on Huntingdon Avenue at a high rate of speed. The car turned onto Germantown Avenue at which time it came to an abrupt stop in the parking lane. As Officer Hermes began to exit his vehicle, Spears exited the driver's side of the station wagon. Officer Hermes ordered Spears to turn around and then conducted a pat-down search to ensure his safety. During the pat-down search for weapons, Officer Hermes felt a "plastic and hard" substance in the pocket of Spears' shirt. After manipulating the contents of Spears' pocket, Officer Hermes determined the

substance to be crack cocaine and, therefore, attempted to take Spears into custody by handcuffing him. This attempt, however, was unsuccessful, as Spears flung his arm up and began to flee from the officer. Officer Hermes, accompanied by two other officers, pursued Spears. The officers apprehended him following a brief struggle.

¶ 4 After Spears was handcuffed, Officer Hermes retrieved from his pocket what was later determined to be crack cocaine. He also retrieved $52.00 in U.S. currency from Spears' person.[1] Spears was arrested and charged with possession with the intent to deliver a controlled substance (PWID) and criminal conspiracy.

¶ 5 On June 15, 1998, the trial court denied Spears' motion to suppress physical evidence, and on June 24, 1998, a jury convicted Spears of PWID and criminal conspiracy. The trial court imposed a sentence of three to six years of imprisonment for the PWID conviction and six years' consecutive probation for the conviction of criminal conspiracy. Post-trial motions were filed and denied. This appeal followed.

¶ 6 On appeal, Spears raises the following issues for this court's consideration:

1. Did the lower court err when it failed to grant the appellant's motion to suppress physical evidence?

2. Did the lower court err in failing to bar the prosecution from impeaching the appellant with a conviction for drug possession, in violation of the *crimen falsi* rules?

3. Did the lower court err when it exercised its discretion in exceeding the sentencing guidelines?

¶ 7 In his first issue, Spears challenges the constitutionality of the stop and frisk. He claims that the trial court erred by

---

1. There was a person situated in the passenger seat of Spears' vehicle. This person remained in the vehicle throughout the entire

incident. Police recovered $675.00 in U.S. currency from his person.

allowing into evidence the physical items taken from Spears' person. We agree.

¶ 8 Initially, we note our standard of review of the denial of a suppression motion. When reviewing an order denying a motion to suppress evidence, we must determine whether the factual findings of the trial court are supported by the evidence of record. *Commonwealth v. Jackson*, 451 Pa.Super. 129, 678 A.2d 798, 800 (1996). In making this determination, this court may only consider the evidence of the Commonwealth's witnesses, and so much of the evidence for the defendant, as fairly read in the context of the record as a whole, as remains uncontradicted. *Id.* Additionally, it is exclusively within the province of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony. *Commonwealth v. Fitzpatrick*, 446 Pa.Super. 87, 666 A.2d 323, 325 (1995). If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous. *Id.*

¶ 9 In the first part of our analysis, we must focus on whether Officer Hermes had the reasonable suspicion necessary to subject Spears to an investigatory stop and frisk. We find that he did.

¶ 10 Recently, in *Commonwealth v. E.M.*, 558 Pa. 16, 735 A.2d 654 (1999), our supreme court revisited and summarized the jurisprudence surrounding the "investigatory stop and frisk." In that case the court stated:

> It is well established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Lewis*, 535 Pa. 501, 509, 636 A.2d 619, 623 (1994). An investigatory stop subjects a person to a stop for a period of detention, but does not involve such coercive conditions as to constitute the

functional equivalent of an arrest. *Commonwealth v. Ellis*, 541 Pa. 285, 294, 662 A.2d 1043, 1047 (1995). Such an investigatory stop is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational inferences derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion. *Commonwealth v. Murray*, 460 Pa. 53, 61, 331 A.2d 414, 418 (1975).

*E.M.* at 659.

¶ 11 The *E.M.* court further stated that a pat-down of a suspect's outer garments is justified during a valid investigatory stop if the officer "observes unusual and suspicious conduct which leads him to reasonably believe that the suspect may be armed and dangerous." *E.M.* at 659 (citing *Terry*, 392 U.S. at 24, 88 S.Ct. 1868 and *Interest of S.J.*, 551 Pa. 637, 713 A.2d 45, 48 (1998)) (other citations omitted). Moreover, a frisk is only justified if the officer can "point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York*, 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

¶ 12 In the present case, Officer Hermes, an eight-year veteran of the police force with three years of experience with the Narcotic Strike Force, viewed what he believed to be a drug transaction taking place between appellant and several others. Through his binoculars, he witnessed people walking up to Spear's car, handing money through the passenger side window and receiving in return what Hermes thought to be drugs. When Officer Hermes approached the scene with his overhead lights on, Spears fled in his station wagon, finally stopping after the ensuing chase. Moreover, this all took place at approximately three o'clock in the morning in an area known for the sale of narcotics.

¶ 13 Under the totality of the circumstances, we find that Officer Hermes was justified in believing that criminal activity

was afoot and was, therefore, justified in conducting an investigatory stop. *E.M., supra.* Moreover, we also find that the circumstances were sufficiently dangerous to warrant a pat-down frisk for weapons. *See Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969) (officer may conduct frisk of suspect's outer clothing for weapons if he reasonably concludes that the person with whom he is dealing may be armed and dangerous); *Terry*, 392 U.S. at 27, 88 S.Ct. 1868 (pat-down search is justified if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."). *See also Commonwealth v. Patterson*, 405 Pa.Super. 17, 591 A.2d 1075 (1991) (taking judicial notice that drug dealers are likely to be armed and dangerous).

¶ 14 Having found that an investigative stop and a protective frisk were justified, we must now determine whether the frisk was properly conducted. In *Terry*, the United States Supreme court clearly held that a frisk effectuated for the safety of an officer must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Terry*, 392 U.S. at 26, 88 S.Ct. 1868.

¶ 15 In recent years, the United States Supreme Court and the appellate courts of this Commonwealth have analogized the warrantless seizure of contraband in plain view to the warrantless seizure of contraband discovered thorough a police officer's sense of touch. *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Commonwealth v. Johnson*, 429 Pa.Super. 158, 631 A.2d 1335 (1993). This is now known as the "plain feel" exception to the warrant requirement. In *Dickerson*, the Supreme Court held:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Dickerson*, 508 U.S. at 374, 113 S.Ct. 2130.

¶ 16 This court followed the *Dickerson* rationale in *Johnson, supra*. In *Johnson*, the appellee was the subject of a pat-down search by police. During the pat-down search, the officer "did a squeeze of [the appellee's] entire body," squeezing appellee's clothes. When he squeezed the crotch area of the appellee's clothing, he felt a "crunchy" substance. It was immediately apparent to the officer, based upon the minimally intrusive tactile impression and his years of experience, that the crunchy material was some type of controlled substance. In accordance with the jurisprudence set forth by the Supreme Court in *Dickerson*, this court held that no Fourth Amendment violation occurred because there was no need for the officer to "manipulate or alter" the object in any way and the identity of the contraband was "immediately apparent" through only a "minimally intrusive and constitutionally permissive pat-down." *Johnson* at 1336. *See also Commonwealth v. Dorsey*, 439 Pa.Super. 494, 654 A.2d 1086 (1995) (holding that police officer was justified in seizing contraband where it was "immediately apparent" through a tactile impression during a *Terry* frisk that the object was indeed contraband).

¶ 17 Instantly, Officer Hermes testified at the suppression hearing that in order to conduct a *Terry* frisk for weapons, he instructed Spears to "turn around and place his hands on the vehicle" so that he could perform a pat-down search for weapons. In describing how he conducted the search, Officer Hermes testified on direct examination that "[m]y hands initially [were] flat, feeling for weapons, and at the point I felt the items in the pocket I squeezed them slightly to see the consistency." Officer Hermes further testified that during this pat-down search, he felt a

"plastic and hard substance" in Spears' shirt pocket. Once he felt this object, however, he "moved" it inside of Spear's shirt pocket. The following is an excerpt from the suppression-hearing transcript:

Q. One other thing. You have indicated today when you felt this item you[ ] moved it, you twisted it, right?

A. I moved it, that is correct.

Q. You moved it inside of his shirt, right?

A. That is correct.

¶ 18 This manipulation is precisely the type of contact proscribed by our court in *Johnson* and the United States Supreme Court in *Dickerson*. The record makes it clear that the contents of Spears's pocket were not "immediately apparent" to the officer while performing the pat-down search. The officer was only able to determine the nature of the substance after he returned to the pocket to "squeeze" and manipulate the object in order to determine its identity. Clearly, this conduct was more intrusive than that which took place in *Johnson*, as the facts in *Johnson* indicate the officer there was immediately able to determine, without further manipulation, that the substance was indeed contraband. *Johnson, supra.*

¶ 19 We, therefore, find that the physical evidence seized in this case should have been suppressed, as the search conducted by Officer Hermes exceeded the "lawful bounds" set by the United States Supreme Court in *Terry*. *Dickerson, supra*; *Johnson, supra.*

¶ 20 Judgment of sentence reversed. Case remanded for a new trial in accordance with the dictates of this memorandum.[2] Jurisdiction relinquished.

¶ 21 JOYCE, J., files a Dissenting Opinion.

2. We need not evaluate Spears' final two claims as we are required to reverse his judg-

JOYCE, J., dissenting:

¶ 1 Although I agree with the majority's determination that Officer Hermes possessed the requisite reasonable suspicion to conduct the investigatory stop, I respectfully dissent in this case as I believe that the pat-down search of Appellant for weapons did not exceed the lawful bounds.

¶ 2 This Court has summarized and applied the plain feel exception as follows:

[W]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, the officer may conduct a patdown search to determine whether the person is in fact carrying a weapon. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence. Rather, a protective search –permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed.

We have already held that police officers, at least under certain circumstances, may seize contraband detected during the lawful execution of a *Terry* search. [This is pursuant to the] plain view doctrine. Under that doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.

If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting

ment of sentence under the foregoing constitutional analysis.

some further search of the object—*i.e.*, if its incriminating character is not immediately apparent—the plain-view doctrine cannot justify its seizure.

We think that this doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no search within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point. The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment. The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour and mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view doctrine. . . .

[T]he tactile impression perceived by an officer justifiably engaged in the pat-down of a suspect is an element to be considered in determining whether the officer had sufficient cause to thereafter engage in a search more intrusive than that permissive under *Terry v. Ohio, supra.* Where it is immediately apparent from the tactile impression that the suspect possesses contraband on his person, a seizure of the contraband is justified.

*Commonwealth v. Johnson,* 429 Pa.Super. 158, 631 A.2d 1335, 1338–1340 (1993). In applying the plain feel exception, this Court requires that the police officer's testimony reflect his or her perceptions in removing an item from a suspect. *Commonwealth v. Mesa,* 453 Pa.Super. 147, 683 A.2d 643, 647 (1996). Absent testimony that the officer felt a possible weapon or, that he or she recognized the item to be contraband, police officers are not justified in conducting an intrusive search. *Id.* In this case, the police officer testified that he believed the object to be crack cocaine. N.T. Suppression Hearing, 6/15/98, at 18. Therefore, this initial requirement was clearly met. The majority does not mention that requirement, instead begins their analysis with a discussion on the officer's actions in conducting the pat-down search.

¶ 3 The majority relies on the analysis in *Commonwealth v. E.M.,* 558 Pa. 16, 735 A.2d 654, 1999 Pa.Lexis 2107 (1999), to find that although Officer Hermes had reasonable grounds to stop and search Appellant for weapons, the officer exceeded the scope of a permissible pat-down.[3] Regarding *E.M.'s* companion case of *Hall,* the police officer observed the defendant and two other individuals exchange currency for a small unidentified bag. The officer then saw Hall put the baggie into his left coat pocket. When the officer ordered defendant to stop, defendant quickened his pace and ran into the alley. The officer then apprehended Hall and conducted a pat-down, ultimately feeling the left pocket containing the illegal substance. The officer testified that although he knew the baggie did not contain a weapon, he still grabbed and squeezed the pocket determining that it felt like vials, at which time he immediately recognized that the sub-

---

**3.** The Supreme Court consolidated two cases for appellate review. Although cited as *Commonwealth v. E.M.,* I will refer to the facts in the companion case of *Commonwealth v. Hall* as they are applicable to the analysis.

stance was drugs. Thereafter, the officer seized the substance.

¶ 4 Based on these facts, the Supreme Court determined that the requisite reasonable suspicion existed to conduct the stop and further, the officer was justified in frisking Hall for weapons. However, the Court concluded that even if reasonable grounds existed to stop and search for weapons, the officer's frisk exceeded the scope of a permissible pat-down. The Court based this conclusion on the officer's testimony that upon conducting the frisk, he knew the item was not a weapon. Upon that observation, the Court concluded that the search was not lawfully conducted where the primary purpose in patting the defendant down was to feel the bag to see if it contained drugs.

¶ 5 Although instructive as to when a search may be deemed improper, I do not believe the holding in *E.M.* can be applied to the facts of this case. *E.M.* does not pertain to the manipulation or alteration of the object in question as is disputed in this case, but rather applies to the officer's conduct in continuing the pat-down search despite his belief that the suspect did not possess a weapon. The majority relies on *Commonwealth v. Johnson*, 429 Pa.Super. 158, 631 A.2d 1335 (1993) for the proposition that a minimally intrusive and constitutionally permissive pat-down search for weapons occurs where there is no need to manipulate or alter the object in question. I believe the facts and analysis in *Johnson* are more akin to the facts presented in this case, where the disputed conduct dealt with the officer's alleged manipulation of the object to determine its identity, rather than his predetermined belief that the item may be contraband.

¶ 6 In their analysis, the majority overlooks the facts of the *Johnson* case in which the police officer "crunched" the object to determine its consistency. *Id.* at 1336. Similarly, Officer Hermes testified that while performing a pat-down search

for weapons, he moved the questionable object. N.T. Suppression Hearing, 6/15/98, at 32. Contrary to the majority's contention, the testimony does not indicate that the officer either manipulated or altered the object. Clearly, when conducting a pat-down search for weapons, some type of movement of the object is intrinsically necessary. From the record, it does not appear that the movement rose to a level that it could be considered a manipulation or alteration. Rather, the object appears to have been moved as all items would necessarily be shifted in the course of a pat-down search. I cannot find that such conduct would mandate suppression of the evidence obtained as I believe the conduct complained of falls within the lawful bounds of the plain feel exception. Accordingly, I would find that the trial court properly failed to suppress the evidence where the conduct complained of clearly fell within the bounds of a permissible search.