J-S19011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE C. GREEN | : | |
| | : | |
| Appellant | : | No. 1569 EDA 2018 |

Appeal from the Judgment of Sentence November 29, 2012
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012604-2011

BEFORE: LAZARUS, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.: **FILED JUNE 11, 2019**

Andre C. Green appeals, *nunc pro tunc*, from his judgment of sentence,

entered in the Court of Common Pleas of Philadelphia County. After our

review, we affirm.

The trial court summarized the facts of this case as follows:

On September 27, 2011, at approximately 6:00 p.m., Officer
Kevin Devlin and his partner were driving in the area of North 38th
and Mount Vernon Streets in Philadelphia, an area known to
Officer Devlin to be a place where narcotics are sold. He saw
[Green] bent down between the curb and a parked car, but as
they drove closer to [Green's] location, someone on the block
announced the police[] presence. He also saw another unknown
male appearing to wait near the scene where [Green] was
crouched. [Green] reacted to the announcement by standing up,
looking for the police car, and upon seeing the police, grabbing at
his right waistband and quickly moving eastbound.

Officer Devlin told his partner that he believed that what they had
witnessed was an aborted drug transaction, because in his
experience, cars parked near the curb are a known drug stash
location utilized by drug traffickers in that area. More importantly,

_____

* Retired Senior Judge assigned to the Superior Court.

[Green] reacted to the police presence by grabbing at and holding his waistband as he moved quickly from the scene. This gave Officer Devlin reasonable suspicion that [Green] was armed with a gun that was tucked into his waistband rather than being properly holstered.

Officer Devlin did not activate his sirens or lights, he did not honk or shout at [Green], and he did not make any other ostentatious show of force. He simply watched [Green] walk into a corner store while holding his right waistband area, parked his car, and followed [Green] into the store. When he entered the store, Officer Devlin prudently asked [Green] to put his hands up. [Green] complied immediately, and as soon as he did, the handle of the gun tucked into his waistband was apparent.

Trial Court Opinion, 10/5/16, at 4-5 (citations omitted).

Green was charged with carrying a firearm without a license,[1] possession of a firearm by a prohibited person,[2] and carrying a firearm in public in Philadelphia.[3] He filed a pre-trial motion to suppress the firearm. On October 4, 2012, the trial court denied the motion and proceeded to trial. Following a nonjury trial, the trial judge found Green guilty on all charges. On November 29, 2012, the trial court sentenced Green to two to four years' incarceration, followed by eight years' probation. Green did not appeal his judgment of sentence. On November 5, 2013, Green filed his first PCRA petition, which the PCRA court dismissed. This Court reversed and remanded the PCRA court's dismissal of Green's PCRA petition on July 24, 2017. On March 27, 2018, the Supreme Court denied the Commonwealth's petition for

_____

[1] 18 Pa.C.S.A. § 6106.

[2] 18 Pa.C.S.A. § 6105.

[3] 18 Pa.C.S.A. § 6108.

allowance of appeal. On remand, the PCRA court reinstated Green's direct appeal rights *nunc pro tunc* on May 9, 2018. Now, on appeal, Green argues that Officer Devlin lacked reasonable suspicion to detain him and, therefore, the trial court erred in not suppressing the handgun evidence.

We begin our analysis by reciting our well-settled standard:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

***Commonwealth v. Jones***, 874 A.2d 108, 115 (Pa. Super. 2005) (citation omitted). Additionally, our review is limited to the record developed during the suppression hearing. ***See Commonwealth v. Lukach***, 195 A.3d 176, 182-83 (Pa. 2018). As the prosecution prevailed in the matter, we must review the record in the light most favorable to the Commonwealth. ***Commonwealth v. Rickabaugh***, 706 A.2d 826, 832 (Pa. Super. 1997). "When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." ***Commonwealth v. Baker***, 963 A.2d 495, 500 (Pa. Super. 2008) (quoting ***Commonwealth v. Mayhue***, 639 A.2d 421, 435 (Pa. 1994)). If the evidence supports the trial court's findings, we may reverse only if the court erred in reaching its legal conclusions. ***Commonwealth v. Coleman***, 19 A.3d 1111, 1115 (Pa. Super. 2011).

Green argues that the police illegally pursued him when they followed him into a store and ordered him to put his hands up. He argues that the police engaged in an investigatory detention but did not have reasonable suspicion or probable cause to believe a crime was about to occur. Therefore, he argues, the stop was unconstitutional and all evidence seized during the interaction must be suppressed.

There are three levels of police interaction with citizens. *Commonwealth v. Reed*, 19 A.3d 1163, 1166 (Pa. Super. 2011).

> The first of these [interactions] is a 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an 'investigative detention[,]' must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause.

*Commonwealth v. Campbell*, 862 A.2d 659, 663 (Pa. Super. 2004). Here, Officer Devlin discovered the gun after following him to the convenience store. Therefore, we must determine if the record supports the suppression court's findings that the interaction was an investigatory stop and that there was reasonable suspicion. *See id.*; *Jones*, 874 A.2d, at 115.

It is well-established that in order to perform an investigatory stop, a police officer must have a reasonable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The totality of the circumstances must be considered when determining if there was reasonable suspicion. *United*

*States v. Cortez*, 449 U.S. 411, 417 (1981). In determining whether this level of suspicion has been attained, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Factors considered together can generate reasonable suspicion even though each factor individually may be consistent with innocent behavior. *See Commonwealth v. Randolph*, 151 A.3d 170, 178 n.2 (Pa. Super. 2016). We do not view the situation as an ordinary citizen might; instead, we focus on the circumstances as seen through the eyes of the trained officer. *In the Interest of B.C.*, 683 A.2d 919, 924 (Pa. Super. 1996). During an investigatory stop, an officer can briefly detain an individual and perform a pat-down if he reasonably believes that the suspect may be armed. *See Commonwealth v. Spears*, 743 A.2d 512, 514 (Pa. Super. 1999); *see also Commonwealth v. Davis*, 102 A.3d 996, 999 (Pa. Super. 2014) ("A *Terry* frisk is a type of investigative detention requiring reasonable suspicion that criminal activity is afoot and that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others.")

Based on our review of the record, we find that the circumstances gave Officer Devlin reasonable suspicion to believe criminal activity was afoot. First we note that Officer Devlin had been a police officer for twelve years at the time of the arrest. N.T. Suppression, 10/4/12, at 8. He spent eight of those

years on the Narcotics Strike Force. *Id.* In a known drug area, Officer Devlin saw Green bend down between a curb and a parked car. *Id.* at 13, 15. Officer Devlin testified that, based on his experience, observing past drug transactions, this was likely part of a narcotics transaction. *Id.* at 15. When another person alerted Green to the police presence, Green quickly left the area. *Id.* As he was leaving the area, he was holding his waistband. *Id.* at 20. At the suppression hearing, Officer Devlin testified that this was consistent with carrying a concealed firearm without a holster. *Id.*

While each of these facts alone may be innocent, when taken together under the totality of the circumstances, they give rise to reasonable suspicion that criminal activity was afoot. Accordingly, Officer Devlin was permitted to pursue Green and perform an investigatory stop where he temporarily detains Green and performs a pat-down. *See Spears*, 743 A.2d at 514; *see also Davis*, 102 A.3d at 999. An officer is permitted to seize contraband seen in plain view during a legal stop. *See Commonwealth v. Ballard*, 806 A.2d 889, 892. As discussed above, Officer Delvin's stop of Green was legal because there was reasonable suspicion that a crime was afoot. Thus, the gun seen in plain view during the stop was admissible evidence at trial.

Accordingly, we find no error with the trial court's determinations. The trial court's findings are supported by the record, and the court properly concluded Officer Devlin had reasonable suspicion that criminal activity was afoot.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 6/11/2019*