J-A09033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY BREELAND | : | No. 1560 EDA 2021 |

Appeal from the Order Entered July 2, 2021
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000976-2020

BEFORE: NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MAY 13, 2022**

The Commonwealth appeals the order of the Court of Common Pleas of Monroe County granting a suppression motion in favor of Anthony Breeland (Breeland). We affirm.

On June 1, 2020, Breeland was sitting in a parked vehicle at a Clarion Inn Hotel in Monroe County. Two Pennsylvania State troopers who were on patrol found his presence there to be suspicious, so they approached him and eventually had Breeland exit the vehicle. A search of Breeland's person yielded crack and powder cocaine, leading the officers to then search Breeland's vehicle, where additional controlled substances and contraband

_____

[*] Retired Senior Judge assigned to the Superior Court.

were retrieved. During the encounter, Breeland also made incriminating statements.

After he was charged with four drug-related offenses, Breeland moved to exclude from the evidence at trial the retrieved substances and his statements on the grounds that the initial search of his person violated his Fourth Amendment right to be free from an unreasonable search and seizure. At the suppression hearing, the sole witness was one of the two arresting officers, Trooper Anthony Spegar. *See* Suppression Hearing Transcript, 2/1/2021, at pp. 10-72.

Trooper Spegar testified that he was on a routine patrol in a marked police car near the Clarion Inn Hotel in Monroe County, which, according to Trooper Spegar, was a high-crime area where he had made a number of drug-related arrests.[1] On the night in question, at about 9:45 p.m., Trooper Spegar saw Breeland sitting alone in a parked Toyota sedan. After looking up the vehicle's registration, he found that it was linked to a woman from Allentown who clearly was not Breeland.

At around 10:00 p.m., Trooper Spegar parked his patrol vehicle and approach Breeland on foot. As he neared, the officer saw Breeland make what appeared to be furtive movements toward the center console of the Toyota.

_____

[1] Officer Spegar was accompanied by his partner, who did not testify at the suppression hearing.

He also noticed that Breeland had with him four cellular phones, and that there was a white powdery substance on the center console. The officer testified that Breeland appeared to be nervous, as evidenced by the movement of his hands, a lack of eye contact, and the vague yet inconsistent reasons Breeland gave him for sitting in the hotel's parking lot.[2] Suspecting that Breeland could be concealing some kind of criminal activity, Trooper Spegar asked Breeland to step out of the vehicle.

Initially, Breeland hesitated, asking why the request had been made. Breeland's reluctance to comply made the officer even more suspicious, prompting the officer to order Breeland out of the car. *Id*. at p. 54. Breeland again asked why he was being ordered to step out, and without clarifying, the officer again demanded that he exit the vehicle.

When he agreed to step out, Breeland assumed what the officer described as a "bladed" or "fight or flight" stance, leading the officer "to believe that he may have a weapon on him[.]" *Id*. at p. 16. The officer described this stance as a movement of Breeland's hands from "down by his sides" to "his lower chest area." *Id*. at p. 29.

---

[2] The officer clarified during cross-examination that Breeland had at first explained that he was sitting in his vehicle to avoid an argument with his girlfriend. At some point later during the conversation, Breeland said that he was not having an argument, and that he just wanted to listen to the radio in the vehicle. *See* Suppression Hearing Transcript, 2/1/2021, at pp. 47-49.

The officer then asked Breeland to consent to a pat-down search or frisk of his person to determine whether he was armed. Breeland asked why that request was made and "backed away" a few feet from the officer. *Id*. at p. 55. Moments later, however, he complied.

During the pat-down search for weapons, Trooper Spegar touched Breeland's pant pocket and felt "a rock-like substance" in a plastic bag. *Id*. Based on his training and experience, he thought the bag could contain "a number of different types of narcotics." *Id*. at p. 16. The officer asked Breeland directly what the bag contained, and Breeland said that he did not know.

The officer then removed the bag from Breeland's pocket, at which point Breeland stated that he was not at the hotel for drugs and that he did have a "drug problem." *Id*. at p. 17. The officer identified the substance in the plastic bag as possibly being either crack cocaine or powder cocaine. Breeland then admitted that he had just picked up the crack cocaine, but he would not say where he had gotten it. Trooper Spegar also found in Breeland's pocket a few hundred dollars wrapped in rubber bands. The officer testified that carrying cash in this manner was indicative of drug trafficking. Breeland's demeanor was described as aggressive, defensive and non-cooperative and he was arrested. Over Breeland's objection, Trooper Spegar searched the Toyota, yielding drug packaging, a scale with drug residue on it, and over $3,000 in

cash. It was discovered after Breeland's arrest that his driver's license had been suspended.

Crucially, Trooper Spegar admitted that at the time he ordered Breeland out of the vehicle and prior to any of the searches, he "could not pinpoint a specific criminal activity that was occurring." *Id*. at p. 58. While the officer had a general suspicion that crime was afoot, he could not "deduce it to a specific criminal activity [without further investigation]." *Id*. Further, when the officer initially felt the plastic baggie in Breeland's pocket during the pat-down search, he could only generally ascertain that "the rock-like substance was consistent with the feel of cocaine, or heroin, meth, something in a rock-like form." *Id*. at p. 60.

Breeland moved to suppress the evidence obtained from the pat-down search of his person on the ground that Trooper Spegar had been unable to identify any contraband prior to removing the plastic bag in his pocket. Further, Breeland argued that the illegality of that pat-down search made the subsequent vehicle search and Breeland's incriminating statements inadmissible at trial.

The trial court granted Breeland's motion to suppress the evidence obtained from his person, as well as the resulting statements and evidence obtained by the police thereafter. In its opinion, the trial court reasoned that the pat-down search was unlawful because Trooper Spegar lacked probable cause to believe that the bag he felt in Breeland's pocket was contraband prior

to removing it. **See** Trial Court Opinion, 7/2/2021, at 7-9. That is, the officer had been unable to articulate how the feel of a rock-like substance in a plastic bag could be distinguished from any number of "legitimate, small, hard objects in a baggie." **Id**. at 7.

By removing the item from Breeland's pocket before it could be identified as contraband, the officer exceeded the scope of a lawful frisk and did not satisfy the "plain feel" exception to the warrant requirement.[3] The evidence obtained in that search (including Breeland's statements and the items seized from the vehicle he occupied) was also subject to exclusion from trial as the product of the initial illegality. **See id**. at 10-11.

The Commonwealth timely appealed the suppression order and the trial court entered a 1925(a) opinion outlining why the order should be upheld. **See** 1925(a) Opinion, 9/25/2021, at 1-2. The trial court reiterated and incorporated by reference the facts and reasoning discussed in its earlier opinion: "In our Opinion and Order filed on July 2, 2021, we determined that the record is devoid of evidence that the suspected crack cocaine had an

---

[3] The "plain feel" doctrine "allows an officer to seize non-threatening contraband detected through the officer's sense of touch during a **Terry** frisk, if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression, and the officer has a lawful right of access to the object." **Commonwealth v. Stevenson**, 744 A.2d 1261, 1265 (Pa. 2000).

identifiable mass or contour to immediately identify it as such based upon a preponderance of the evidence." *Id*. at 2.

The Commonwealth now raises a single issue in its brief:

Whether the [trial court] erred as a matter of law when it applied a preponderance of evidence analysis and failed to conduct a probable cause inquiry into the totality of the circumstances surrounding the pat-down search as required by the Plain Feel Doctrine[.]

Appellant's Brief, at 6.[4]

The Commonwealth's main contention in this appeal is that the trial court applied an incorrect legal standard when determining whether the officer's pat-down search of Breeland comported with the "plain-feel doctrine." According to the Commonwealth, the trial court incorrectly weighed the evidence under a preponderance standard rather than the appropriate standard of probable cause under the totality of the circumstances. The Commonwealth argues further that, based on the totality of the circumstances, the arresting officer had probable cause, as a matter of law,

---

[4] The Commonwealth's appellate claims are limited to the trial court's findings as to the initial search of Breeland's person. Accordingly, it is not necessary for us review the portions of the trial court's order concerning the suppression of Breeland's subsequent statements and the items later seized from the vehicle he was occupying.

to believe that the plastic bag retrieved from Breeland's pocket contained contraband.[5]

First, the record establishes that the correct legal standard was applied. In its opinion, the trial court thoroughly set forth the law governing the permissible scope of a pat-down search or "frisk" for weapons, as well as the "plain feel" doctrine, which is the narrow exception to the warrant requirement invoked by the Commonwealth to justify the initial search of Breeland's person in this case. The following summary of law, taken verbatim from the trial court's opinion, demonstrates that the trial court used the correct legal standards:

> It is well-established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads [him or her] to reasonably conclude that criminal activity may be afoot. Moreover, if the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons.

---

[5] When an order granting a suppression motion is being appealed, our review "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Stem**, 96 A.3d 407, 409 (Pa. Super. 2014) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the suppression court." **In re L.J.**, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). We defer to the suppression court, "as factfinder[,] to pass on the credibility of witnesses and the weight to be given to their testimony." **Commonwealth v. Elmobdy**, 823 A.2d 180, 183 (Pa. Super. 2003). "[H]owever, we maintain *de novo* review over the suppression court's legal conclusions." **Commonwealth v. Brown**, 996 A.2d 473, 476 (Pa. 2010).

*Commonwealth v. Stevenson*, 744 A.2d 1261, 265 (Pa. 2000) (citations omitted).

Since the sole justification for a *Terry* [frisk] is the protection of the officer or others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Thus, the purpose of the limited search is not to discover evidence, but to allow the officer to pursue [his or her] investigation without fear of violence.

[*Id*.] (citations omitted).

If the *Terry* protective search goes beyond what is needed to determine the presence of weapons, it is no longer valid, and evidence seized must be suppressed. *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993).

Where the police extend a frisk of an individual beyond the limited purposes of a *Terry* frisk [for officer and public safety], the Commonwealth needs a separate exception [to the warrant requirement] to justify the search and any subsequent seizure of the individual's personal property.

*Commonwealth v. Graham*, 721 A.2d 1075, 1078 (Pa. 1998).

[T]he United States Supreme Court considered the question of whether an officer may also properly seize non-threatening contraband "plainly felt" during a *Terry* frisk for weapons. Answering the question in the affirmative, the [Supreme Court] adopted the so-called plain feel doctrine and held that a police officer may seize non-threatening contraband detected through the officer's sense of touch during a *Terry* frisk, if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression, and the officer has a lawful right of access to the object. As [it] made clear, the plain feel doctrine is only applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent. "Immediately apparent" means that the officer readily perceives, without further exploration or searching, that what [he or she] is feeling is contraband. **If, after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further**

**search, the immediately-apparent requirement has not been met, and the plain feel doctrine cannot justify the seizure of the object**.

*Stevenson*, *supra*, at 1265 (citations omitted, emphasis added).

**In the course of the *Terry* frisk, a trooper must form probable cause to believe he or she is feeling contraband before seizing it**. *Dickerson*, *supra*, at 376. "An officer's subjective belief that an object is contraband is not sufficient, unless it is objectively reasonable in light of the facts and circumstances existing at the time of the frisk." *Commonwealth v. Zhahir*, 751 A.2d 1153, 1163 (Pa. 2000).

**Further, the Commonwealth has the burden of proving evidence is admissible when challenged in a suppression motion**. **Pa. R. Crim. P. 581(H)**. **Therefore, it must prove by a preponderance of the evidence that the suspected crack was immediately-apparent contraband**. *See Commonwealth ex. Rel. Butler v. Rundle*, 239 A.2d 426, 429 (Pa. 1968).

Courts in Pennsylvania have addressed the issue whether an unknown, small, hard object felt in a plastic "container" during a *Terry* frisk is immediately apparent as drugs, when thought to be consistent with the packaging of drugs, *Stevenson*, *supra*, at 1267 (officer felt small, hard object wrapped in plastic and determined it was crack cocaine only after conducting further search — squeezing and manipulating the object — and its seizure was not justified by the plain feel doctrine); *compare Zhahir*, *supra*, at 1163 (defendant had 91 pieces of crack cocaine inside two bags, which obviously would have a unique feel that a single piece does not); *Commonwealth v. Bryant*, 866 A.2d 1143, 1145 (Pa. Super. 2005) (same, where an officer felt 40 heat-sealed baggies of suspected crack).

There are many legitimate small and hard items that a person may have inside a plastic "container" in a pocket. Such things in plastic are not contraband *per se*, and the identity of the substance could only be determined by further searching or analysis after removing the object from the pocket. In other words, the record does not contain evidence to conclude that a piece of crack cocaine in plastic has a peculiar "mass or contour" that immediately

- 10 -

distinguishes it from legitimate, small, hard objects in a baggie. *See Stevenson*, *supra*, at 1265.

Trial Court Opinion, 7/2/2021, at 5-7 (emphases added).

After correctly stating the law governing the constitutionality of warrantless pat-down searches and the plain feel doctrine, the trial court accurately cited the record evidence, concluding that the arresting officer lacked probable cause at the time of Breeland's pat-down to believe that he was in possession of contraband. In doing so, the trial court analogized the circumstances of the present case to the facts of several controlling opinions in which the officer's observations did not pass constitutional muster. *See id*. at 7-9.[6]

In all of those cases, the courts applied a probable cause analysis to determine that the search was unlawful because the criminal nature of the item in question was not immediately apparent from its mass and contour. Taken in context, the trial court's reference to the preponderance standard concerned the Commonwealth's burden of proof in establishing the admissibility of evidence after a motion to suppress was filed. *See* Pa.R.Crim.P. 581(H). This, too, was an accurate statement of law. *See id*.

---

[6] The trial court likened the facts of the present case with those in *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993); *Commonwealth v. Stevenson*, 744 A.2d 1261, 1265 (Pa. 2000); *Commonwealth v. Stackfield*, 651 A.2d 558, 562 (Pa. Super. 1994); *Commonwealth v. Guillespie*, 745 A.2d 654, 659 (Pa. Super. 2000); and *Commonwealth v. Spears*, 743 A.2d 512, 515 (Pa. Super. 1999). The Commonwealth has not attempted to distinguish any of these cases in its appellate brief.

Second, we consider the Commonwealth's claim that the trial court ignored the totality of the evidence and assigned too much weight to the arresting officer's uncertainty as to what the plastic bag in Breeland's pocket contained. The Commonwealth argues that the trial court erred in granting suppression because the officer had probable cause to believe that the plastic bag contained contraband based on his training in recognizing controlled substances and Breeland's location and demeanor during the encounter.

We find this argument unpersuasive because all of the circumstances cited by the Commonwealth were only relevant insofar as they would enable the officer to identify the item in Breeland's pocket from touch alone. As discussed above, a critical component of the plain feel doctrine is that an object's criminal nature must be immediately apparent from its mass or contour. **See Stevenson**, 744 A.2d at 1265 ("If, after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the immediately-apparent requirement has not been met, and the plain feel doctrine cannot justify the seizure of the object.").

Here, despite all of the officer's experience, training and observations, the criminal character of the plastic bag in Breeland's pocket was not immediately apparent to the officer prior to its removal. Upon feeling a "rock-like substance" inside a plastic bag, the officer speculated vaguely that it could have been "a number of different types of narcotics." Suppression hearing

Transcript, at 2/1/2021, at p. 16. Since the officer did not know whether the substance was contraband or what kind of narcotic the substance could be, the officer asked Breeland to identify it:

> Defense Counsel: [B]ecause you weren't clear which of those things it was you asked Mr. Breeland, what's this? And you assumed, as you said a moment ago, that he'd answer, right?
>
> Officer: That is correct.
>
> Defense Counsel: Okay. He gives you a response, I don't know what it is in my pocket, right? And so you go in, you remove it yourself to determine, officially, what it is?
>
> Officer: That is correct.

*Id*. at pp. 61-62.

The trial court did not err in relying on these facts to conclude that the plain feel doctrine was inapplicable, as the officer essentially conceded that further investigation was needed for him to identify the criminal nature of the substance. *See e.g.*, *Spears*, 743 A.2d 512 (finding no probable cause to satisfy plain feel doctrine where officer felt a "plastic and hard substance" during a pat-down and further investigation was needed to identify it as crack cocaine). Accordingly, for the foregoing reasons, we find that the trial court did not abuse its discretion in granting Breeland's motion to suppress the evidence.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/13/2022*