J-A01013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| IAN BRADLEY CORBIN | : | |
| | : | |
| Appellant | : | No. 704 EDA 2022 |

Appeal from the Judgment of Sentence Entered February 14, 2022
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0005062-2019

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, P.J.:                **FILED MARCH 14, 2024**

Ian Bradley Corbin appeals, *pro se*, from the judgment of sentence, entered in the Court of Common Pleas of Lehigh County, after a jury convicted him of two counts of manufacture, delivery, or possession with intent to manufacture or deliver (heroin and fentanyl/heroin) (PWID)[1] and one count of possession of a controlled substance (heroin and cocaine).[2]  After review, we affirm.

The trial court set forth the facts and procedural history of this case as follows:

On October 8, 2019[,] at approximately 9:24 a.m., Officer Kyle
French was dispatched for a report of a domestic disturbance

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] *Id.* at § 780-113(a)(16).

involving a knife. He received a description of [Corbin] and was told the suspect was headed to a 7-[Eleven] store on Susquehanna Street in Allentown, Lehigh County, Pennsylvania. Officer French and Officer Andrew Holvec[k] made contact with [Corbin] as he was walking back from the 7-[Eleven] store[.] [Corbin] was patted down due to possibly having a knife. Officer French felt something in [Corbin's] pocket[,] which he testified he immediately recognized as the packaging for marijuana. He reached in [Corbin's] pocket and found black latex gloves with two bags of an off-white powdery substance and small, rock-like[,] white substance. Officer French also located blue wax baggies. The substances field tested positive as heroin and cocaine.

In the meantime, Officer Holvec[k] followed up with the victim, Jessica Maxfield. [] Maxfield indicated [Corbin] woke up angry and could not find his drugs. She is a drug user and she admitted to previously stealing drugs from [Corbin], who she identified as a drug dealer. [] Maxfield indicated that [Corbin] accused her of stealing his drugs, then pulled a knife on her and threatened to kill her if she did not find the drugs. She provided Officer Holvec[k] a written statement to that effect.

Trial Court Opinion, 4/5/23, at 2-3 (unnecessary capitalization omitted).

Corbin was charged with the aforementioned drug offenses. On June 10, 2020, Corbin filed a motion to suppress evidence due to lack of probable cause. The court held a hearing on April 29, 2021, denied the motion to suppress, and scheduled the case for trial. *See* Order, 5/25/21. Prior to trial, Corbin insisted on proceeding *pro se*, and the court appointed Robert E. Sletvold, Esquire, as standby counsel.

Following a two-day trial, the jury convicted Corbin of all three charges. The court ordered a presentence investigation report (PSI) and, on February 14, 2022, sentenced Corbin to an aggregate term of 5½ to 12 years' imprisonment. On March 7, 2022, Corbin filed a *pro se* notice of appeal. On March 8, 2022, the court entered an order directing Corbin file a Pa.R.A.P.

1925(b) concise statement of errors complained of on appeal. On March 18, 2022, Corbin filed a *pro se* post-sentence motion, which the court denied based on the fact that Corbin had already filed his notice of appeal. **See** Pa.R.A.P. 1701(a) (except as otherwise prescribed, after appeal is taken, trial court may no longer proceed further in matter). Corbin filed his Rule 1925 (b) statement on April 8, 2022 after the court granted his request for an extension of time.

On April 21, 2022, Corbin filed a second *pro se* notice of appeal and a motion for bail pending appeal, which the trial court granted. On appeal, this Court remanded for appointment of counsel, and the trial court appointed Matthew Rapa, Esquire, to represent Corbin. On June 3, 2022, Corbin was convicted in an unrelated criminal matter; the trial court revoked Corbin's bail, and Corbin filed a third *pro se* notice of appeal on June 28, 2022.

> On or about July 22, 2022, Attorney Rapa advised the court that he would be withdrawing the duplicative appeals [Corbin had] filed. The same day, the court entered an order directing counsel to file an amended [Rule 1925] concise statement identifying any issues [Corbin] sought to raise on appeal so that [he] would not be inadvertently prejudiced by the discontinuance of his serial appeals. The counseled concise statement was filed on August 11, 2022.
>
> The court issued a [Rule] 1925(a) opinion on August 25, 2022. On August 30, 2022, [Corbin] filed a motion for withdrawal of counsel in [the trial] court while his matter was on appeal to the Superior Court. The counseled concise statement was filed on August 11, 2022. On October 4, 2022, the Superior Court remanded the matter with instructions for the court to conduct an

on-the-record **Grazier**[3] hearing. The court held that hearing on October 24, 2022 and[,] at the close of that hearing[,] granted court-appointed counsel leave to withdraw and [permitted Corbin] to represent himself. The matter was then returned to the Superior Court.

Trial Court Opinion, 4/5/23, at 4-5 (unnecessary capitalization omitted).

Thereafter, in November 2022, Corbin filed several *pro se* motions. This Court remanded the case once again and directed the trial court to provide Corbin with any requested notes of testimony and documents deemed necessary and relevant to Corbin's issues on appeal and directed Corbin to file a Rule 1925(a) concise statement within twenty-one days of receipt of those materials.[4] Both Corbin and the trial court have complied with Rule 1925.

Corbin raises the following issues on appeal:

1. Did law enforcement officers exceed permissible bounds during a **Terry**[5] stop and frisk, and unlawfully enter [Corbin's] pocket and remove items, where: the nature and scope of the search were unrelated to the justification that prompted the search; the officer was not in fear of [his] safety; and the incriminating nature of the contraband was

_____

[3] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

[4] On remand, the trial court ordered Corbin to specify materials he needed. On January 17, 2023, Corbin filed a *pro se* request for documentary and other evidentiary material, including preliminary hearing transcripts and audio recordings and transcripts of a 911 call. On January 31, 2023, the court ordered certain material be provided to Corbin, but denied his request for preliminary hearing transcripts, as they did not exist. On February 8, 2023, Corbin filed his *pro se* Rule 1925(b) concise statement, but did not serve it on the trial court. On March 28, 2023, Corbin filed a *pro so* "Motion for Recognition," asking the trial court to accept his Rule 1925(b) statement, which the court granted on April 4, 2023.

[5] **Terry v. Ohio**, 392 U.S. 1 (1968).

not immediately detectable based upon its tactile impression, in violation of the plain feel doctrine?

2. Did law enforcement have probable cause or a warrant to subject [Corbin] to a custodial detention, [and] to extend the search beyond the scope permissible in *Terry*[,] for any domestic violence allegation or marijuana-related offense, prior to the intrusion into [Corbin's] pocket?

3. Were the statements that were obtained from the complainant sufficiently attenuated from the taint of the original illegality, as law enforcement officers used illegally obtained evidence to [e]licit an incriminating statement against [Corbin], whereby the fruit of the poisonous tree doctrine would apply?

4. Was the evidence the Commonwealth used during the criminal proceedings and trial obtained in violation of Article 1, Section 8 of the Pennsylvania Constitution[,] and the Fourth Amendment of the United States Constitution, [guaranteeing] freedom from unreasonable searches and seizures, and the Fourteenth Amendment rights to due process of law and equal protection under the law, as determined by the [United States] Supreme Court?

5. Did the trial court abuse its discretion in denying [Corbin's] petition for writ of habeas corpus/motion to suppress evidence and dismiss due to lack of probable cause, following an unjustifiably excessive *Terry* search, illegal arrest, and further law enforcement misconduct?

6. Were the comments and conduct of the Commonwealth's agents during the trial proceedings, and in closing argument to the jury, prejudicial and biased and [in] violati[on of] Article 1, Sections 1 and 9 of the Pennsylvania Constitution[,] and the Sixth and Fourteenth Amendments of the United States Constitution, denying [Corbin] a fair and just trial by an impartial jury?

7. Did the trial court abuse its discretion in failing to provide the jury with the affirmative defense of justification (18 Pa.C.S.A. § 503)?

8. Was the verdict against the weight of the evidence for the charge of [PWID] (35 P.S. § 780-113(a)(30))?

Appellant's Brief, at 5-6.

We address issues two, four, and five together, as each challenges the the lawfulness of the officers' initial encounter with Corbin.[6] Corbin argues that law enforcement exceeded the permissible bounds of the *Terry* stop and frisk and violated the plain feel doctrine and, therefore, the drugs seized from his pocket were fruit of the poisonous tree and should have been suppressed. *See* Appellant's Brief, at 13-15, *citing Terry*, *supra* and *Wong Sun v. United States*, 371 U.S. 471 (1965).

In an appeal from the denial of a motion to suppress, our Court's role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Turner*, 772 A.2d 970, 972 (Pa. Super. 2001), citing *Commonwealth v. Hayward*, 756 A.2d 23, 26 (Pa. Super. 2000). Moreover,

> [s]ince the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Bomar*, 826 A.2d 831, 842 (Pa. 2003).

---

[6] Corbin combines issues 1 and 2 in his first argument section (I) in his brief, argues issue 3 in the second argument section (II) of his brief, and argues issue 6 in section (V) of his brief, in violation of Pa.R.A.P. 2119(a).

Initially, we note that for a search to be reasonable under the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution, the police must obtain a warrant, supported by probable cause, and issued by an independent judicial officer, prior to conducting the search. *Commonwealth v. Gary*, 91 A.3d 102, 107 (Pa. 2014). There are several exceptions to the warrant requirement, however, and one is relevant here: *Terry* frisks for officer safety based on an officer's reasonable suspicion that criminal activity is afoot. *Id.*

> It is well-established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot. *Terry*, 392 U.S. [at] 30 []. Moreover, if the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons. **Since the sole justification for a *Terry* search is the protection of the officer or others nearby, such a protective search must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence**.

*Commonwealth v. Stevenson*, 744 A.2d 1261, 1264-65 (Pa. 2000) (emphasis added; some internal citations omitted). **Nevertheless, under the plain feel doctrine, an officer**

> **may seize non-threatening contraband detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband**, the incriminating nature of the contraband is immediately apparent from its tactile impression[,] and the officer

> has a lawful right of access to the object. [**Minnesota v.]
> Dickerson**, 508 U.S. 366[,] 373-75 [(1993).] As **Dickerson**
> makes clear, the plain feel doctrine is only applicable where the
> officer conducting the frisk feels an object whose mass or contour
> makes its criminal character immediately apparent. Immediately
> apparent means that the officer readily perceives, without further
> exploration or searching, that what he is feeling is contraband. If,
> after feeling the object, the officer lacks probable cause to believe
> that the object is contraband without conducting some further
> search, the immediately apparent requirement has not been met
> and the plain feel doctrine cannot justify the seizure of the object.

**Id.** at 1265 (emphasis added; some internal citations omitted); **see also**

**Commonwealth v. Pakacki**, 901 A.2d 983, 989 (Pa. 2006) (under plain feel

doctrine, officer may seize nonthreatening contraband detected through

officer's sense of touch during **Terry** frisk if officer is lawfully in position to

detect presence of contraband, incriminating nature of contraband is

immediately apparent from tactile impression, and officer has lawful right of

access to object).

Here, Officers French and Holveck responded to a "report of a domestic

disturbance in which an African-American male was described as threatening

a person with a knife." Trial Court Opinion, 4/5/23, at 8. The report specified

the male was wearing "a black jacket with white stripes on the sleeves and

heading toward the 7-[Eleven] on E[ast] Susquehanna Street." **Id.** at 8-9.

Based on the physical description of the suspect, the clothing he wore, and

the reported location, the officers had reasonable suspicion, based on these

articulable facts, that Corbin was the suspect in the domestic disturbance

report and that he was armed with a knife. Given what the officers knew

about the time, place, and characteristics of the actor, their detention of

Corbin was justified. The officers, therefore, did not exceed the permissible scope of a **Terry** pat-down. **See Commonwealth v. Cunningham**, 287 A.3d 1, 9 (Pa. Super. 2022) (to demonstrate reasonable suspicion, detaining officer must articulate something more than inchoate and unparticularized suspicion or hunch, and we examine totality of circumstances through eyes of trained officer, not ordinary citizen).

However, whether the seizure of the contraband was within the permissible bounds of the plain feel doctrine is a separate issue. In **Dickerson**, the United States Supreme Court applied the plain feel doctrine and found the seizure of the contraband was unconstitutional. 508 U.S. at 379. There, the officer had determined that the lump was contraband only "after squeezing, sliding, and otherwise manipulating the contents of the defendant's pocket—a pocket which the officer already knew contained no weapon." **Id.** at 378. Since the incriminating character of the lump in defendant's pocket was not "immediately apparent," the further search of defendant's pocket was unconstitutional and, therefore, the seizure of cocaine that followed was likewise unconstitutional. **Id.** at 379.

Unlike the particular facts in **Dickerson**, here, the identity of the contraband was "immediately apparent" to Officer French during a constitutionally permissible pat-down. At the suppression hearing, Officer French, a twelve-year veteran of the Allentown Police Department, testified that following the dispatch, he arrived at the 7-Eleven at 11 East Susquehanna within one to two minutes, located the suspect behind the 7-Eleven store, and

approached him while wearing his body-worn camera. ***See*** N.T. Suppression

Hearing, 4/29/21, at 103-06. Officer French stated:

> I initially made contact with [Corbin] to identify him because he matche[d] the description that we were given as the party involved in the domestic. And he does give us his name, but he was really—the best way to describe it[,] squirrely, and because there was a knife involved, [Officer Holveck and I] were afraid he still had it on him. . . . I advised him we were going to detain him, pat down for any weapons. He did not want to be detained. It appeared he wanted to get away, like he was going to run if he had the opportunity. . . . We put handcuffs on him. His hands [were] handcuffed behind his back. He was a little resistant to that. We struggled a little bit, but nothing overbearing.

***Id.*** at 107-08. Officer French described the ensuing ***Terry*** search as follows:

> With my hands, the palm of my hands, [I] started at the waistband. That's typically where a lot of weapons are kept. Because the knife was involved, I didn't know if it was a kitchen knife, folding knife. Check his pockets, because you can store a folding knife in the pockets, and work my way down. . . . In his right front pocket I felt a bulge that was very similar to the feel of marijuana. . . . When I felt that bulge, it felt like the feeling of marijuana. You could hear like a crinkle, like it was in plastic. At that point, I looked up at Mr. Corbin, and I said, "You have marijuana on you?" And he said, "No, it's not marijuana." [I] then pulled out that item. . . . It was a black latex glove inside another black latex glove. Inside that glove was a plastic bag full of rice with loose heroin in it, a bundle of heroin, as well as two cocaine rocks.

***Id.*** at 108-11. Thereafter, Officer French testified that he had performed at

least 20 prior pat-downs where he found marijuana, ***id.*** at 112, and his tactile

impression that the bulge was marijuana was "based on [his] training and

experience." ***Id.*** at 127. The questioning continued:

BY MR. CORBIN:

> Q: [] **So would you say—you said on prior statements and prior hearings that you did manipulate my pocket, right**?
>
> A: **After the first time I felt it, yeah**. . . . **After I felt what I believed to be the marijuana**, and I did grab it, yes.

*Id.* at 126-28 (emphasis added).

This testimony confirms that, unlike the pat-down in *Dickerson*, here there was no "sliding, and otherwise manipulating" the baggie in order to ascertain its contents—Officer French testified that he immediately recognized that the bulge consisted of a controlled substance, what he believed was marijuana. There is nothing in the record to suggest that Officer French further manipulated the bulge in order to determine its identity. *See id.* at 111 ("When I felt that bulge, it felt like the feeling of marijuana. You could hear like a crinkle, like it was in plastic."). *See also Commonwealth v. Johnson*, 631 A.2d 1335, 1336 (Pa. Super. 1993) (lawful *Terry* search included crunching and squeezing). The fact that the suspected marijuana was actually heroin/fentanyl and cocaine is of no moment. Furthermore, Officer French was still in the process of frisking Corbin for weapons; he had not already concluded that no knife was present on Corbin's person. Therefore, under these facts, we conclude that Officer French had probable cause to believe what he felt was contraband and that he was "both justified and duty-bound under *Dickerson* to seize such contraband." *In Interest of B.C.*, 83 A.2d 919, 926 (Pa. Super. 1996); *see also Commonwealth v. Stevenson*, 744 A.2d 1261, 1265 (Pa. 2000) (under plain feel doctrine "a police officer may seize non-threatening contraband detected through the

officer's sense of touch during a **Terry** frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression[,] and the officer has a lawful right of access to the object."). **Cf. Commonwealth v. Mesa**, 683 A.2d 643, 647 (Pa. Super. 1996) (absent testimony officer felt possible weapon or recognized item to be contraband, police officers are not justified in conducting intrusive search).

In issue three, Corbin argues the statements obtained from the complainant were "fruit of the poisonous tree," and, therefore, were inadmissible.[7] Appellant's Brief, at 26, 32. Because we have determined that the **Terry** search and the ensuing seizure of the contraband were valid, the fruit of the poisonous tree doctrine does not apply. **See Commonwealth v. Shabezz**, 166 A.3d 278, 290 (Pa. 2017) (evidence constitutes "fruit of the poisonous tree," and must be suppressed, if it was obtained by exploitation of illegality of seizure), citing **Wong Sun**, 371 U.S. at 476.

Next, Corbin argues the Commonwealth committed prosecutorial misconduct during opening statements, trial, and in closing argument to the jury. **See** Appellant's Brief, at 46. He claims the prosecutor's comments were

---

[7] At trial, the Commonwealth introduced a handwritten statement by the complainant, provided to Officer Holveck, in which the complainant wrote, "woke up talking bout (sic) missing drugs & pulled a knife said if I dont (sic) find the stuff he[']ll kill me[.]" **See** Exhibit C-6; N.T. Jury Trial, 12/3/21, at 137, 179.

prejudicial and biased, and he was denied a "fair and just trial[.]" *Id.* No relief is due.

In reviewing a claim of prosecutorial misconduct, we are limited to determining whether the trial court abused its discretion. *Commonwealth v. Hall*, 701 A.2d 190, 198 (Pa. 1997). Further, we are mindful that a defendant is entitled to a fair trial, not a perfect one. *Commonwealth v. Rios*, 721 A.2d 1049, 1054 (Pa. 1998). Even if a prosecutor's remarks are intemperate or improper, relief is warranted only if the unavoidable effect of the remarks is so prejudicial as to form in the jury's mind hostility and bias toward the defendant, such that the jury could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Ragan*, 742 A.2d 390, 404 (Pa. 1999); *Commonwealth v. Ervin*, 766 A.2d 859, 864 (Pa. Super. 2000).

Corbin takes issue with the prosecutor's opening and closing statements, which portrayed Corbin as a drug dealer—the theory of the prosecution's case based on the amount and packaging of the drugs found on Corbin's person. "A prosecutor is generally allowed to vigorously present and argue his case, as long as the comments are supported by evidence and contain inferences which are reasonably derived from that evidence." *Commonwealth v. LaCava*, 666 A.2d 221, 231 (Pa. 1995), citing *Commonwealth v. Hardcastle*, 546 A.2d 1101, 1109 (Pa. 1988). Our Supreme Court has consistently held that prosecutorial misconduct "will not be found where comments were based on evidence or proper inferences

therefrom or were only oratorical flair." ***Commonwealth v. Johnson***, 289 A.3d 959, 1039 (Pa. 2023), citing ***Commonwealth v. Clancy***, 192 A.3d 44, 58 (Pa. 2018).

Here, the prosecutor's comments did not create a misleading characterization but, rather, were consistent with the evidence and testimony presented. We find no abuse of discretion. ***Hall***, ***supra***.

Corbin next argues that the court's failure to sequester witnesses, in particular Detective Matthew Trettor, who testified on behalf of the Commonwealth as an expert in drug packaging and trafficking amounted to prosecutorial misconduct. ***See*** Appellant's at 49. Corbin did not include this claim in his Rule 1925(b) statement and, therefore, it is waived. ***See*** Pa.R.A.P. 1925(b)(4)(vi) (issue not included in Rule 1925 statement and/or not raised in accordance with Rule 1925(b)(4) are waived).[8]

Corbin also argues that the prosecutor's questioning of defense witness, Ms. Maxfield, the complainant, amounted to witness intimation. ***See*** Appellant's Brief, at 53. This claim, too, is waived because Corbin failed to include it in his Rule 1925(b) statement. ***See*** Pa.R.A.P. 1925(b)(4)(vi).

---

[8] Even if not waived, this claim is meritless. The purpose behind Pennsylvania Rule of Evidence 615, the rule permitting sequestration, is to prevent a witness from molding his or her testimony to the testimony of other witnesses. Detective Trettor was not a fact witness and, therefore, the sequestration order did not apply to him. Detective Trettor's expert testimony was essential to the presentation of the Commonwealth's case, ***see*** Pa.R.E. 615(3), and it was necessary that he hear the factual basis of the charges in order for him to give his opinion.

In his next issue, Corbin argues the trial court abused its discretion in failing to provide the jury with an instruction on the affirmative defense of justification. *See* Appellant's Brief, at 57-58, citing 18 Pa.C.S.A. § 503. Corbin contends that his defense was premised on the theory that he possessed the narcotics to protect Maxfield and her unborn child, insofar as he was preventing Maxfield, who admitted to a thirteen-year heroin addiction, from using the drugs.

Our standard of review regarding jury instructions is well established:

> We review jury instructions for a clear abuse of discretion or an error of law. A jury charge is erroneous only if the charge as a whole is inadequate, not clear, or has a tendency to mislead or confuse a material issue. **The trial court properly gives a jury instruction if there is an evidentiary basis on which the jury could find the element, offense, or defense that is the subject of the instruction.**

*Commonwealth v. Hall*, 199 A.3d 954, 963 (Pa. Super. 2018) (citations omitted) (emphasis added).

Corbin argues:

> [Corbin] could reasonably expect that his actions would be effective to avoid greater harm or evil in possessing the drugs to prevent Ms. Maxfield from ingesting substances that could be harmful to her and her pregnancy. (*See* N.T. 12/3/21, at 132 (Ms. Maxfield's addiction results in a miscarriage)). [] This case provides a very unique and authentic situation, regarding factual elements and the application of the law, in regard to: Possession of a Controlled Substance []; Possession with Intent to Manufacture or Deliver []; and the affirmative defense of justification. [] There can be no debate as to the harm or evil that is inherent in the use, abuse, and addiction of drugs[,] which is even more elevated when it relates to heroin and fentanyl. It can also be considered morally reprehensible [] for [Corbin], in failing

to act, [to] have allowed Ms. Maxfield to consume the drugs in question without removing them from her presence when he had knowledge of their existence, especially considering her being pregnant with his offspring.

Appellant's Brief, at 63.

Section 503 provides:

(a) General rule.--Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:

(1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

(2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; **and**

(3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

(b) Choice of evils.--When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

18 Pa.C.S.A. § 503 (emphasis added).

Following our review, we agree with the trial court's conclusion that a justification defense was not available to Corbin. In order to be entitled to an instruction on justification by necessity as a defense to a crime charged, Corbin would have had to offer evidence to show: (1) there was a clear and imminent harm to Ms. Maxfield; (2) he could reasonably expect that his actions would be effective in avoiding the harm; (3) there was no legal

- 16 -

alternative effective to abate the harm; and (4) the legislature has not precluded the defense by a clear and deliberate choice regarding the values at issue. *See Commonwealth v. Capitolo*, 498 A.2d 806, 809 (Pa. 1985) (holding that if defendant's proffer on one element of justification is deficient, "the trial court has the right to deny use of the defense and not burden the jury with testimony supporting other elements of the defense").

Here, the trial court concluded that, although subsections (a)(2) and (a)(3) may have been met, the evidence did not establish that "the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged[.]" *See* N.T. Jury Trial, *supra* at 181. *See also* 18 Pa.C.S.A. § 503(a)(1). Corbin was in possession of the following: Item 1.1—bag containing .55 grams of cocaine; Item 1.2—bag containing 1.25 grams of heroin; Item 1.3—bag containing 7.15 grams of heroin and fentanyl; and Item 1.4—10 glassine packets each of .02 grams heroin and phenobarbital. *See* N.T. Jury Trial, *supra* at 61-63. The amount and packaging of the drugs aside, the trial court noted that Corbin could easily have disposed of the drugs before he left the residence. As a result, the court determined that since there was no evidence of clear and immediate harm, Corbin did not meet the requirements of subsection (a)(1). We agree. Though Corbin presents a sympathetic argument, his claim that his possession of the drugs was justified by necessity is implausible. The trial court, therefore, did not abuse its discretion in refusing Corbin's request for an instruction on the defense of justification. *Hall*, *supra*.

Corbin's final issue on appeal challenges the weight of the evidence with respect to his conviction of PWID. A challenge to the weight of the evidence must be preserved by a motion for a new trial. *See* Pa.R.Crim.P. 607(A) (claim that verdict was against weight of evidence shall be raised with trial judge in motion for new trial orally, on the record, before sentencing, by written motion before sentencing, or in post-sentence motion). As stated above, Corbin filed a post-sentence motion on March 18, 2022,[9] after he had filed his notice of appeal. The trial court had no jurisdiction to act on the motion and, therefore, we conclude Corbin did not properly preserve his weight of the evidence claim. *See Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa. Super. 2014) (failure to properly preserve weight claim will result in waiver, even if trial court addresses issue in opinion).[10]

Judgment of sentence affirmed.

---

[9] This motion was untimely filed. *See* Pa.R.Crim.P. 720(A)(1) (post-sentence motion shall be filed within ten days of sentencing).

[10] Even were we to address this claim, we would find it meritless. "The jury was free to make credibility determinations and accept or reject [Corbin's] testimony, and all the other testimony, as it chose." *Commonwealth v. West*, 937 A.2d 516, 522 (Pa. Super. 2007). As this Court has repeatedly stated, it not our function to re-weigh the evidence. *See Commonwealth v. Sanchez*, 262 A.3d 1283, 1288-89 (Pa. Super. 2021) ("[I]t is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.") (emphasis added; citations omitted); *see also Commonwealth v. Delmonico*, 251 A.3d 829, 837 (Pa. Super. 2021); *Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013); *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000).

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/14/2024